STOKER, Judge.
Pursuant to LSA-R.S. 9:4821 plaintiff, Linzay Downs, Inc., filed a rule to show cause why certain liens should not be can-celled as untimely filed under LSA-R.S. 9:4812.[1] The defendants-in-rule were R. E. Heidt Construction Company, Inc., (Heidt); Hosea Johnson Building Materials, Inc., *6 (Hosea Johnson); Eunice Soil Cement, Inc., (Eunice Soil Cement); and Lee’s Plumbing and Electrical Supply, Inc. Plaintiff chose not to press the rule against Lee’s Plumbing and Electrical Supply, Inc. Judgment was signed June 30, 1980, in favor of plaintiff-in-rule ordering cancellation of the liens recorded by Heidt, Hosea Johnson and Eunice Soil Cement. Hosea Johnson moved for a new trial and in written reasons for judgment the court recognized the validity in part of Hosea Johnson’s lien. Heidt, Hosea Johnson and Eunice Soil Cement appealed. Eunice Soil Cement abandoned its appeal by failing to file a brief or appear before this court prior to oral argument. The appellants before us are Heidt and Hosea Johnson.
The issue on appeal is whether Heidt and Hosea Johnson timely filed lien affidavits pursuant to LSA-R.S. 9:4812.
Plaintiff, Linzay Downs, Inc., is the owner of a tract of land in St. Landry Parish on which it decided to build a race track. The race track complex was to include a track, a club house, parking areas, stables and jockey quarters. The plaintiff entered into six written contracts with six different parties for various aspects of the construction work. Plaintiff also entered into verbal agreements with some parties for work to be done in constructing the complex. In addition the plaintiff employed a crew of men who worked under plaintiff’s direct supervision to perform work in construction of the complex which was not included in any of the contracts or verbal agreements.
Defendant-appellant Heidt entered into a verbal agreement with plaintiff, Linzay Downs, Inc., to perform asphalt work. This work was performed on July 12, 1979. Heidt recorded a lien on January 2, 1980, asserting that it was owed $8648.29 for this asphalt work.
Defendant-appellant Hosea Johnson furnished materials to Linzay Downs during the period of time that work was done under the six written contracts and for a time thereafter. Hosea Johnson received payment for some of these materials but has not received payment for materials furnished from June 29, 1979, to October 18, 1979. Hosea Johnson recorded a lien on December 17,1979, for $4159.06 to cover the cost of materials furnished to Linzay Downs.
In written reasons for judgment the trial judge concluded that each contract for work at the Linzay Downs complex stood alone and that there were no general contractor — sub-contractor relationships involved. The court found that Heidt performed its last work on July 12, 1979, and that the lien filed January 2, 1980, was untimely filed since it was not recorded within sixty days of July 12, 1979.
In its original reasons for judgment the court found that Hosea Johnson provided materials to Linzay Downs on an open account basis and that the lien was invalid. Following a motion for a new trial the court rendered additional reasons for judgment in which it recognized the validity of Hosea Johnson’s lien in part. The court reasoned that Hosea Johnson had two separate agreements with Linzay Downs. The court classified the first agreement as one of the original contracts for construction of the complex which was completed and paid for. The second agreement was classified as a sale on an open account of materials for upkeep, repairs, and maintenance. The judge reasoned that each purchase on open account had to be secured by a separate lien filed within sixty days of purchase. The *7 court recognized Hosea Johnson’s lien for $44.47 as represented by the invoice of October 18, 1979.
On appeal Heidt contends that since the contract entered into between Shay Homes and Linzay Downs for the construction of track railings had never been accepted as complete nor had a notice of default been filed of record that Heidt had an open-ended period within which to file its lien. We find no merit to this argument. We do not believe that the lack of a recorded acceptance or notice of default for the Shay Homes contract provides an open-ended period in which lien affidavits may be filed by those not a party to the Shay Homes contract.
Hosea Johnson contends that the trial judge erred in three significant respects:
(1) In concluding that there were two separate agreements between Hosea Johnson and Linzay Downs.
(2) In concluding that each purchase on open account would have to be secured by a separate lien.
(3) In applying the acceptance filed in connection with the M'. D. Descant contract (one of the six written contracts) to the agreement between Hosea Johnson and Linzay Downs.
We agree with Hosea Johnson that the trial court erred. Hosea Johnson had an agreement to furnish materials to Lin-zay Downs which were used in the construction of the Linzay Downs racing complex. The Linzay Downs maintenance crew used the materials furnished by Hosea Johnson to perform construction work which was independent of that work done under the six written contracts.
The October 18, 1979, invoice for $44.47 covers the purchase of one gallon of paint and a jig saw. At the rule to show cause Richard Ledoux, the maintenance supervisor for Linzay Downs, in response to a question about the invoiced items, testified as follows:
“Q. What was the jig saw used for?
A. The jig saw was a replacement jig saw for a man that worked for me at the track. There were some of the tools that we needed that the track didn’t have, didn’t own and in this case Mr. Soileau went and got his own jig saw and we used it and it subsequently burnt out. So, I replaced that. I went and got him another one to give him back his personal item is what it boils down to.
Q. What was the paint used for?
A. I’m not really sure * * * just off hand I couldn’t tell you right here what the paint was for. If I knew the color or something * * * it more than likely was the paint that was used to finish painting a rail that we put out by the patio. We found we had a safety hazard there. A lady almost rolled down the hill one day, so, we put a patio rail up.
Q. Who put up the patio rail?
A. The maintenance crew. We put it up and painted it.”
The testimony establishes that the saw was purchased and given to a workman as a replacement for his tool that had been expended in the construction of the tract complex. As a type of payment or reimbursement to a worker we feel that this constitutes an item which can be secured by a lien.
The testimony of Ledoux reveals that the gallon of paint was used to paint a railing which had been constructed around a patio area by the maintenance crew. The paint was material furnished to be used in “construction” within the meaning of LSA-R.S. 9:4812. We find that the lien affidavit filed December 18, 1979, was timely filed within sixty days of the last furnishing of materials by Hosea Johnson. Additionally, we find that the lien affidavit serves to preserve Hosea Johnson’s claim for $4,159.06 representing the cost of materials furnished from June 29,1979, to October 18, 1979. We interpret LSA-R.S. 9:4812 to mean that as long as the lien affidavit is timely filed within sixty days of the last *8 furnishing of materials that the lien secures the entire unpaid sum which represents the cost of the materials furnished. Albert K. Newlin, Inc., v. Weingarten’s Markets Realty, 253 So.2d 594 (La.App. 3rd Cir. 1971).
ATTORNEY’S FEES
LSA-R.S. 9:4821 provides in part:
“Any owner of immovable property against which a lien has been filed shall be entitled to judgment canceling such lien upon proof in a summary proceeding that the lien is invalid. In the event the owner by certified mail to the lien claimant requests the cancellation of the lien and states the reason why the lien is invalid, and the lien is not canceled within thirty days after receipt of such written request, the owner, upon successful prosecution of his suit and a showing that the refusal to cancel the lien was arbitrary, capricious, and unreasonable, shall be entitled to reasonable attorney’s fees.”
The trial judge awarded plaintiff attorney’s fees of $1,000.00. We reverse this award. Reasonable attorney’s fees are to be awarded upon successful prosecution of a suit when there has been a showing that the refusal to cancel the lien was arbitrary, capricious, and unreasonable. Plaintiff has not made this showing. We find that Heidt’s failure to cancel its lien was not arbitrary, capricious and unreasonable. Furthermore, since we recognize the validity of Hosea Johnson’s lien the failure to cancel this lien cannot be held to be arbitrary, capricious and unreasonable.
For the above and foregoing reasons the judgment of the trial court ordering cancellation of certain liens filed against the property of Linzay Downs, Inc., is affirmed in part and reversed in part. We affirm the judgment insofar as it declared the lien filed by R. E. Heidt Construction Company, Inc., to be invalid and ordered the cancellation thereof. We reverse and set aside the judgment and amended judgment of the. trial court insofar as it declared invalid and ordered cancelled the lien filed by Hosea Johnson Building Materials, Inc., with the exception of the lien for the sum of $44.47 filed October 18, 1979.
We further reverse that portion of the trial court judgment which awarded attorney’s fees.
IT IS NOW ORDERED, ADJUDGED, and DECREED that the lien of Hosea Johnson Building Materials, Inc., in the full sum of $4,159.06 be and it is hereby decreed to be valid and the demands of plaintiff-ap-pellee, Linzay Downs, Inc., with respect to this lien are rejected.
IT IS FURTHER ORDERED, ADJUDGED, and DECREED that defendant-appellant, Hosea Johnson Building Materials, Inc., be relieved of the obligation to pay any portion of the costs of the proceedings in the trial court, such costs to be paid in equal shares by the remaining defendants.
Plaintiff-appellee Linzay Downs, Inc., and defendant-appellant R. E. Heidt Construction Company, Inc., are assessed with the costs of this appeal, one-half to be paid by each.
AFFIRMED IN PART; REVERSED IN PART.

. LSA-R.S. 9:4812 reads in pertinent part:
“When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said build *6 ing or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear....”