509 So.2d 43 (1987)
LaMOYNE-CLEGG DEVELOPMENT CORPORATION
v.
BONFANTI-FACKRELL, LTD.
No. CA 86 0480.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
*44 Bernard Sharkey, Baton Rouge, for plaintiff-appellee LaMoyne Clegg Development Corp.
Eric A. Kracht, Baton Rouge, for defendant-appellant Bonfanti Fackrell, Ltd.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
The defendant, Bonfanti-Fackrell, Ltd., appeals the trial court's judgment on a rule to show cause in favor of the plaintiff, LaMoyne-Clegg Development Corporation. The court's action cancelled and removed from the records the defendant contractor's lien on plaintiff's immovable property, awarded the plaintiff $3,000 attorney's fees, made peremptory a writ of mandamus ordering the clerk of court to cancel the lien and maintained plaintiff's right to pursue damages against the defendant.
Plaintiff, as owner, and defendant, as general contractor, entered into a contract on September 6, 1984, whereby defendant agreed to construct condominiums for the plaintiff for the contract sum of $1,972,000. The contract also provided that the plaintiff could retain ten percent of the contract sum until the project was completed. A 185-calendar-day contract period was stated in the contract, with stipulated delay damages of $1,400 per day for non-completion within the contract period. An arbitration clause provided for arbitration of any disputes between the plaintiff and defendant that could not be resolved by the architect. The contract and the contractor's performance bond were duly recorded. On June 18, 1985, the parties entered into a "Settlement Agreement" which modified some portions and clarified others in the original contract. Specifically, the parties agreed that all future payments on the contract would be made to the defendant and the appropriate subcontractor or materialman jointly. Additionally, the defendant agreed to reimburse plaintiff $13,000 of the contract sum upon substantial completion of the project and agreed that the 185-day contract termination date was June 13, 1985, several days prior to the confection of the settlement agreement. The agreement also modified the contract amount and provided that the plaintiff was entitled to retain the full ten percent retainage amount until the lien period terminated. Subsequently, the contract sum was again amended through a change order, with the final agreed upon sum of $1,986,442, as of July 15, 1985.
On July 24, 1985, the plaintiff executed an authentic act entitled "Notice of Termination of the Work" whereby the plaintiff terminated the work being done by the defendant under the contract, stating that the defendant "is in default under the terms of the contract as amended." Thereafter, on July 31, 1985, the defendant filed and had recorded an "Affidavit of Contractor's Lien and Privilege" wherein Gerald E. Fackrell, Jr., president of the defendant corporation, stated that the contract price was $1,972,000 and that "Bonfanti-Fackrell, Ltd. has completed the construction of the Project and there is presently due and owing Bonfanti-Fackrell, Ltd. the total sum of ... $252,092.78". In the letter from defendant's attorney transmitting a copy of the lien to the plaintiff, the attorney indicated that "once a compromise is reached, Bonfanti-Fackrell, Ltd., will voluntarily cancel the enclosed Lien from the public records." Upon receiving notice of the recorded lien, the plaintiff, on August 6, 1985, requested defendant to provide written authorization directing the recorder of *45 mortgages to cancel the lien, stating that the statement was improperly filed and the amount claimed was not due. The defendant refused, and the plaintiff filed the instant suit to cancel the lien, pursuant to LSA-R.S. 9:4833, on August 27, 1985. After hearing testimony and reviewing documentary evidence at the rule to show cause why the contractor's lien should not be cancelled, the trial court ruled in plaintiff's favor. We agree.
Under the law as it pertains to this particular case, a general contractor has a privilege on an owner's immovable for the price of his work. LSA-R.S. 9:4801. A general contractor whose price of the work exceeds $25,000 enjoys the above privilege if notice of the contract is timely filed. LSA-R.S. 9:4811(D). A general contractor who has so preserved his privilege must file a statement of his privilege within 60 days after the filing of the notice of termination of the work. LSA-R.S. 9:4822(B). A statement of claim or privilege shall be in writing, shall be signed by the general contractor, shall identify the immovable and the owner and "[s]hall set forth the amount and nature of the obligation giving rise to the claim or privilege and reasonably itemize the elements comprising it including the person for whom or to whom the contract was performed, material supplied, or services rendered." LSA-R.S. 9:4822(G).
If a statement of claim or privilege is improperly filed, an owner may require the general contractor to authorize the recorder of mortgages to remove the lien from the records. LSA-R.S. 9:4833(A). If the general contractor refuses without reasonable cause, the owner has an action against the contractor to have the lien removed and to recover any damages and reasonable attorney's fees. LSA-R.S. 9:4833 (B) and (C). The "Comments" to this statute state in part:
Many construction projects contemplate or are dependent upon financing arrangements, leases, or conveyances that are to be consummated shortly after completion of the work. This section is designed to discourage the filing of a claim that is clearly unjustified, late, or otherwise made without reasonable cause for believing it is valid in the hope that economic pressure may be placed upon the owner or contractor to extract a settlement or other payment as the price of a release.
Defendant appeals, contending that the trial court erred by allowing the plaintiff to introduce evidence of default, subsequent payments and work remaining, at the rule to show cause, citing Davis-Wood Lumber Co. v. Wood, 224 La. 825, 71 So.2d 125 (1954). Therein, our supreme court stated that the "defendant in a rule to show cause why the lien should not be erased and cancelled is not then called upon to prove up the validity of each item making up his lien" because to do so would be to try the merits of the case by rule. 71 So.2d at 126. This case, decided in 1954, is inapposite to the instant case because of changes and additions to the statutory provisions since that time. In 1981, the legislature enacted LSA-R.S. 9:4833 which specifically provides in Subsection D for the use of a summary proceeding to determine if a claim has been improperly filed. Under Code of Civ.P. arts. 2593 and 2595, a summary proceeding may be commenced by the filing of a rule to show cause, and tried in open court. Thus, the trial court in the instant case properly allowed the introduction of testimony and evidence in the rule to show cause proceeding.
Defendant also contends that the trial court erred in allowing evidence to be introduced pertaining to breaches, defaults, subsequent payments and work left undone since the contract between the parties provides for arbitration of disputes. We note that the court did not make any determination or ruling on the merits as to damages for breach of contract other than to preserve plaintiff's right to pursue damages. The evidence was introduced to prove that the lien had been improperly filed; therefore, defendant's contention is without merit.
Defendant alleges that the trial court erred in failing to find that all the defendant had to do in order to maintain its lien *46 was show a "color of right" as described in Davis-Wood wherein our supreme court stated that an affidavit which sets out "the nature of the claim, the amount thereof, and the property it was asserted upon" is "all that the law requires." 71 So.2d at 126. (Emphasis ours). It is well settled jurisprudentially that factual findings of the trial court will not be overturned on appeal unless manifestly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
In the instant case, the defendant qualified as a general contractor who could file a lien on plaintiff's property. The defendant's affidavit was timely filed and plaintiff's property was properly described. However, it is evident from the record that the affidavit incorrectly stated (1) the amount of the contract itself, (2) that defendant had completed the project and (3) that there was presently due and owing $252,092.78 to the defendant. Testimony and evidence showed that at the time the lien was filed, the defendant had been removed from the project before it was substantially completed; that the contract at the time of defendant's termination was for $1,986,442; that the plaintiff had paid to the contractor and to the contractor and subcontractors or materialmen jointly $1,737,281.69; that there remained a balance under the contract of $249,160.31; that defendant was aware that the contract period had ended forty-one days prior to defendant's termination and that at least $57,400 would be subtracted from the residual amount for delay damages; that defendant had agreed under the settlement agreement to reimburse plaintiff $13,000 of the contract sum; that plaintiff could retain a full ten percent ($198,644.20) until the lien period terminated; that plaintiff was making subsequent payments to others to complete the work,[1] and that defendant had not complied with the "General Conditions of the Contract For Construction," article 9.9.2, which stated:
Neither the final payment nor the remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work ... have been paid or otherwise satisfied, (2) consent of surety, if any, to final payment and (3), if required by the Owner, other data establishing payment or satisfaction of all such obligations....
Thus it is obvious that at the time defendant filed the lien against plaintiff's property, the defendant knew that the sum of $252,092.78 was not due and owing.
Defendant further alleges that the trial court erred in cancelling the lien without the plaintiff's showing that no debt was owed to the defendant. At the time the lien was filed, it is evident from the record that the defendant had not complied with the requirements of article 9.9.2 of the contract's general conditions, as set out previously in this report. Testimony and evidence showed that defendant never provided plaintiff with an affidavit that all indebtedness connected with the project had been satisfied and that the surety on the performance bond never agreed to final payment. Defendant does not contend that plaintiff owed defendant any money for work done prior to defendant's termination. Defendant, in filing the contractor's lien, was clearly seeking final payment and payment of the retained percentage. Under the express terms of the contract and the settlement agreement, no payment was due and owing to the defendant at the time the lien was filed. Accordingly, we find that the trial court's determination that the lien was improperly filed is not manifestly wrong.
Finally, defendant alleges that the trial court erred in awarding plaintiff $3,000 attorney's fees. Defendant contests the award itself, not the amount of fees awarded. Under LSA-R.S. 9:4833(B), a defendant contractor who fails to deliver written authorization to cancel the lien without reasonable cause is liable for reasonable attorney's fees incurred by the *47 plaintiff owner. Unlike the prior statute, LSA-R.S. 9:4821, the current statute does not require the owner to show that defendant's refusal to cancel the lien was arbitrary and capricious, in addition to unreasonable, in order to be able to collect reasonable attorney's fees. Cf. Linzay Downs, Inc. v. R.E. Heidt Construction Company, Inc., 397 So.2d 5 (La.App. 3d Cir.1981); Welch v. Daigrepont, 378 So.2d 607 (La.App. 3d Cir.1979). It is apparent from the record that evidence was presented from which the trial court could determine that the defendant did not have reasonable cause to believe that the contractor's lien was properly filed. Since the trial court's finding is not manifestly wrong, it will not be disturbed.
For the foregoing reasons, the judgment of the trial court is affirmed in its entirety. Costs of this appeal are to be borne by the defendant, Bonfanti-Fackrell, Ltd.
AFFIRMED.
NOTES
[1] At the time plaintiff filed suit to remove the lien, the record indicates that plaintiff had paid an additional $106,944.90 to materialmen, subcontractors and workers on the project.