362 So.2d 1203 (1978)
ALISON MORTGAGE INVESTMENT TRUST
v.
BPB CONTRACTORS, INC.
No. 9356.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 1978.
Rehearing Denied October 19, 1978.
*1204 Gauche, Wegener & Oster, Edmund T. Wegener, Jr., New Orleans, for intervenor-appellant, D. H. Overmyer, Inc.
Chaffe, McCall, Phillips, Toler & Sarpy, Felix H. Lapeyre, New Orleans, for plaintiff-appellee, Alison Mortgage Investment Trust.
Before SAMUEL, SCHOTT and GARRISON, JJ.
GARRISON, Judge.
This case originated with the sale of immovable property located in Jefferson Parish, from D. H. Overmyer, Inc. to BPB Contractors, Inc., for the stated consideration of $5,200,000.00. The act of sale, duly recorded, took place on January 31, 1973, and contained the following recitation:
"This sale is made and accepted for and in consideration of the price and sum of Five Million, Two Hundred Thousand and No/100 ($5,200,000.00) Dollars Cash, which the said purchaser has well and truly paid, in ready and current money to the said vendor who hereby acknowledge] the receipt thereof and grant[s] full acquittance and discharge therefor." [Italics supplied.]
In spite of the unequivocal expressions of complete payment of the purchase price, the vendor, D. H. Overmyer, Inc., subsequently sought to establish that it was entitled to a vendor's lien on the property in the amount of $700,000. This attempt to establish the viability of the vendor's lien in the face of the act of sale's implacable recitation of full payment received constitutes the nucleus of this case.
In conjunction with this sale, BPB borrowed $4,000,000 from Alison Mortgage Investment Trust and executed a note in that amount in favor of Alison, which was secured by a mortgage on the property involved. This amount was paid by BPB over to Overmyer in cash as part of the purchase price stated in that act of sale. This mortgage was duly recorded by Alison.
At this point it is necessary to addbecause it was later sought to be made an issue in the casethat a representative of the Alison company was present at the execution of the act of sale recited above, although there is a disagreement on the part of the litigants as to whether or not he was a "party" to the sale.
Five hundred thousand dollars in cash was paid to Overmyer by BPB at the same time as the act of sale. However, the remaining $700,000 of the purchase price was not paid in cash as recited in the act of sale. Rather, BPB executed two promissory notes in the amounts of $500,000 and $200,000 in favor of Overmyer.[*] The $500,000 note was unsecured but the note for $200,000 was secured by a mortgage on the same property. This act of mortgage specifically provided that it was a second mortgage, subordinate to the $4,000,000 mortgage granted in favor of Alison.
By March 1977, a default had occurred with respect to both the first and second mortgages. As a result, Alison, the first mortgagee, instituted foreclosure proceedings to protect its $4,000,000 mortgage. A petition for executory process was filed by Alison on March 7, 1977. On the other hand, to appreciate Overmyer's viewpoint at this particular point in time, Overmyer still had not receivedin actualityfull payment for the land it had sold.
On August 3, 1977, the day set for the sale of the property at public auction, Overmyer filed a petition of intervention in the foreclosure proceedings. This intervention sought not to enjoin the public sale, but recognition of Overmyer's alleged vendor's *1205 lien and an order directing the sheriff to withhold that amount, plus accrued interest. An order was issued which recognized Overmyer's vendor's lien as superior to the mortgage held by Alison and, as Alison was the high bidder at the August 3rd auction, the property was properly adjudicated to Alison.
On August 24, 1977, Alison filed an answer to Overmyer's intervention, as well as exceptions of no cause of action and no right of action and motions for judgment on the pleadings and for summary judgment. After a hearing on October 6, 1977, the motion for summary judgment was granted, thereby dismissing Overmyer's intervention and vacating the withholding order based thereon. A rule for a partial new trial, filed by Overmyer, was dismissed and this devolutive appeal brought by Overmyer resulted.
Essentially, the above facts are agreed to by both Alison and Overmyer. The areas of disagreement concern the question as to the extent of the Alison representative's participation in the sale and the question as to whether the vendor's lien was preserved after the recitation in the deed that the full purchase price had been paid in cash.
It is true that an Alison representative was present at the act of sale and knew that BPB gave Overmyer $700,000 of the purchase price in notes rather than in cash. However, mere presence does not make one a party to an act of sale, nor do the overall circumstances indicate that Alison was such a party. Civil Code Article 3556(32); R.S. 9:2722; Sick v. Bendix-United Geophysical Corp., 341 So.2d 1308 (La.App. 1st Cir. 1976).
Nor was the knowledge on the part of the Alison representative that BPB gave Overmyer a part of the purchase price in notes rather than in cashas recited in the act of saleof any determinative significance. Such awareness does not alter or overcome the fact of the recordation and the recital of full payment in the act of sale. It is a well-established principle of law that even actual knowledge is not a substitute for the requirement to properly record privileges. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910); Harang v. Plattsmier, 21 La.Ann. 426 (1869); Wood v. Morvant, 321 So.2d 914 (La.App. 1st Cir. 1975).
While Alison admitted in its answer the above-described knowledge of its representative, this hardly constituted an admission that the purchase price had not been paid in full. To the contrary, it specifically stated that the price indeed had been paid in full.
In any case, not being a party to the act of sale, Alison necessarily was a third personand, as such, was entitled to rely on the public records to find the existence of a vendor's lien. Overmyer's alleged vendor's lien, assuming that it ever came into existence, was not recorded so that it could notwhatever factual circumstances later might be sought to be established by parol evidenceestablish any priority over Alison's position as recited in the act of sale.
The remaining determinative question in the case is whether Overmyer's claimed vendor's lien was preserved after the recitation in the deed that the full purchase price had been paid in cash. The short answer to the question is that the effect of the public records doctrine in Louisiana is such that, following so specific a recitation of complete payment, there remained no language in the act of sale indicative of any remaining obligation, so as to give rise to a vendor's lien.
The vendor's lien is created in Article 3249 of the Civil Code, which states:
"Creditors who have a privilege on immovables are:
"1. The vendor in the estate by him sold, for the payment of the price or so much of it as is unpaid, whether it was sold on or without credit. * * *" [Italics supplied.]
Insofar as the act of sale recital was concerned, Overmyer's claimed vendor's lien had nothing remaining to which it could attach. Nor can the recital of complete payment be altered by parol evidence as Overmyer sought to do in this case. Civil *1206 Code Articles 2236, 2237, 2276. Consequently, as to Alison, Overmyer's alleged vendor's lien can be given no legal recognition.
At the time Alison's mortgage was recorded, there was no indication in the public records that any portion of the purchase price had not been paid. Alison was entitled to rely on these records to determine the ranking of its mortgage.
The significance of the instant case was underscored long ago in the following rhetorical questions posed by Justice Spencer in Durham v. Heirs of Daugherty, 30 La. Ann. 1255 (1878):
"If the vendors of property, or their assignees, be permitted to falsify their own deliberate and solemn acts and declarations, spread upon the public records, that the whole or part of the price of property sold has been received in cash by them, and to prove that they still have the vendor's privilege therefor, although avowing that they had voluntarily, without error, fraud, or violence, received another thing in lieu of the cash, what value would mortgage securities possess? What faith would public records be entitled to?" 30 La.Ann. at 1258.
Third parties must be able to rely on the recitals in public records. To the same end, the public at largefrom attorneys to individuals engaged in commercemust be able to be assured that the courts will uphold with consistency and full force the public records doctrine.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[*] Alison's answer to Overmyer's petition of intervention admits it was aware Overmyer had accepted the recited $5,200,000 purchase price in the form of $4,500,000 in cash and the unsecured $500,000 and secured $200,000 notes from BPB Contractors.