MARVIN, Judge.
In this ranking contest between the mortgagee bank and the intervening general contractor that arose out of a foreclosure by the bank, the issue is whether the purported “description of immovable property” as “D’Arbonne Lake Lodge, Highway. 33, Farmerville, Louisiana,” in the written notice of the building contract earlier filed by the general contractor is legally sufficient under LRS 9:4831 and 4811 A(2) to perfect the contractor’s later-filed lien for labor and materials and thereby prime the mortgage to the bank.
The trial court held that the description in the notice of the contract was not statutorily sufficient and that the contractor’s lien was primed by the bank’s mortgage.
Agreeing, we affirm.
FACTS
On December 12, 1983, before the work began, the general contractor recorded notice of the $825,915 building contract with the owner in the Union Parish mortgage records.
About a month later, on January 10, 1984, the bank recorded the mortgage that secured a $1,200,000 loan to finance the construction. The property was described in the notice of contract only as “D’Ar-bonne Lake Lodge, Highway 33, Farmer-ville, Louisiana.” In the mortgage, the property was described as specific acreage in a section, township, and range in a conventional manner.
On January 7, 1985, the certificate of substantial completion, signed by the owner, the general contractor and the architect, was recorded.
More than a year later, on January 27, 1986, the contractor filed its affidavit claiming it was still owed $26,275 on the contract. The contract provided that the final payment was not due until it was approved by the architect.
On December 27, 1985, the architect approved the final payment. The contractor’s statement of claim was filed within 60 days of the architect’s approval of the payment, but more than a year after the certificate of substantial completion was recorded.
The litigants stipulated the above facts to the trial court. The bank contended the contractor had no privilege on the property, notwithstanding its recordation of the notice of contract before the bank’s mortgage was recorded, because the property description in the notice of contract, giving only the street or mailing address, is insufficient under § 4831 C, and because the statement of claim was not filed by the contractor within 60 days after recordation of the certificate of substantial completion.
The contractor contended the notice of contract taken as a whole, with the property address and with the names and addresses of the owner, the contractor and the architect, sufficiently identified the property affected by the contract. The contractor also argued that the bank was not a “third person” who was entitled to rely solely on the public records, and was not prejudiced by any shortcomings of the property description, because the bank “knew” the proceeds of its loan were intended to finance the construction on the property that secured the mortgage to the bank.
The contractor argued that because the final payment was not due under the terms of the contract until the architect formally approved the payment in December 1985, the 60-day period for claiming a privilege to secure that payment should begin on the payment approval date and not on the date when the certificate of substantial completion had been recorded in January 1985.
*356 The trial court did not reach the timeliness issue because it found the property description in the notice of contract did not “reasonably identify” the property under § 4811 A(2) or comply with the more specific requirements of § 4831 C. The court did not expressly address the arguments about prejudice and reliance on the public records.
GENERAL CONTRACTOR’S PRIVILEGE
A general contractor who performs work on immovable property has a privilege on the property to secure the owner’s obligation to pay for the work. LRS 9:4801(1). If the contract price exceeds $25,000, the general contractor must record notice of the contract before the work begins to be able to later claim the statutory privilege. § 4811 D.
The notice of contract must “reasonably identify the immovable upon which the work is to be performed” and must contain other information, including the names and mailing addresses of the contracting parties.[1] § 4811 A.
Section 4831 C imposes more specific requirements:
Each filing made with the recorder of mortgages pursuant to this Part which contains a reference to immovable property shall contain a description of the property sufficient to clearly and permanently identify the property. A description which includes the lot and/or square and/or subdivision or township and range shall meet the requirement of this Subsection. Naming the street or mailing address without more shall not be sufficient to meet the requirements of this Subsection.
If the general contractor is not paid for work performed under the contract, he must file a statement of his claim within 60 days after “notice of termination of the work” is filed in order to preserve his privilege. § 4822 B, G.[2] The notice of termination certifies, among other things, that the work has been substantially completed. § 4822 E.
If the contractor meets each statutory requirement, his privilege is effective against third persons as of the date the notice of contract was recorded. § 4820 A(l). If the notice of contract is properly recorded before a mortgage is recorded, the general contractor’s privilege primes the mortgage. See § 4821(3), (5), (6).[3]
PROPERTY DESCRIPTION
The contractor’s assertion that the property could be “reasonably identified” under § 4811 A(2) or “clearly and permanently identified” under § 4831 C by something other than the complete legal description that was used in the bank’s mortgage is an equitable argument. The statutes, however, must be followed.
The notice of contract contains no section, township and range numbers or other information to identify, without resort to knowledge or inquiry outside the public records, on what specific property on Highway 33 near Farmerville the D’Arbonne Lake Lodge was being constructed.
We cannot agree with the contractor’s contention that any deficiency in the property description is cured because the notice of the building contract that the *357 bank intended to finance contained the names and addresses of the owner, the contractor and the architect.
The statute clearly requires that the notice of contract must contain both a reasonable identification of the property and the names and addresses of the contracting parties. § 4811 A(2), (3). These two requirements are conjunctively stated and the conclusion to be drawn is obvious. The legislature did not consider the identification of the contracting parties would be equivalent to a reasonable identification of the property or vice versa.
We agree with the trial court that the notice of the contract identifies the property by “the street or mailing address without more” and that this type of property description is expressly deemed insufficient under § 4831 C.
The contractor concedes that the use of the street or mailing address in a notice of termination was found insufficient to identify the property under § 4831 C in Rowley Co. v. Southbend Contractors, 517 So.2d 1260 (La.App. 4th Cir.1987), writ not considered. The court there stated that the notice of contract “contains no better description of the immovable than does the notice of termination” and held that the statutory period for filing claims by a ma-terialman had not yet begun to run because of the deficient property description in the notice of termination. 517 So.2d at 1261-1262.
The contractor argues analogically that a similar suspension or extension of the lien period should be recognized here because the notice of termination contains the same property description that was used in the notice of contract.
Rowley did not squarely address the sufficiency of the property description in the notice of contract because the claimant there was a materialman and not the general contractor. The ranking of the materi-alman’s privilege is not predicated upon, and the privilege may be asserted without, the recorded notice of contract. See § 4820 A and § 4822 A, C.
The general contractor who does work in excess of $25,000 must record notice of the contract, in which both the parties and the property are reasonably identified, in order to later claim its privilege. The ranking of the general contractor’s privilege is predicated on the notice of contract. See § 4820 A, § 4822 B, and State ex rel. Bagur Co. v. Christy-Ann-Lea Corp., 223 So.2d 421 (La.App. 1st Cir.1969). Rowley does not avail the general contractor.
Asserting that the bank “knew” the loan was made to finance construction work on the property used as security to the bank, the contractor argues that the bank is not a “third person” entitled to rely solely on the public records for notice of the contract and was not prejudiced by the property description.
“Third persons” dealing with immovable property are bound only by acts affecting the property that are registered or recorded in the public records. Third persons are not bound by unrecorded claims, even where actual knowledge of unrecorded claim exists. Only the parties and their heirs, as well as others who sign the act as witness or as notary, are excluded from this protection afforded to “third persons.” King v. Peoples Bank and Trust Co., 371 So.2d 257, 263 (La.1979).
In King the bank claimed a second mortgage on property shown by the public records to be owned by the mortgagor who had declared in a counter letter actual ownership of another. The bank’s attorney had notarized both the recorded “sale” to the mortgagor and the unrecorded counter letter identifying the true owners. The bank’s attorney knew that the sale was a simulation and that the true owners had not authorized the bank’s customer to encumber the property with a second mortgage. Because the bank’s attorney had notarized the “sale,” the bank was not deemed to be a “third person” with respect to that act, and was not entitled to rely solely on its contents to identify the owner. The second mortgage to the bank, by the record owner who was not the true owner, was declared null. The result in King does not rest on the bank’s knowledge from outside the public records alone, but on the combination of that knowledge and the sig *358 nature of the bank’s representative on the recorded “sale.”
King should be compared factually to Alison Mtg. Inv. Trust v. BPB Contractors, Inc., 362 So.2d 1203 (La.App. 4th Cir. 1978). There the seller claimed its vendor’s lien on the property was superior to a mortgage. The recorded act of sale recited that the entire purchase price had been paid in cash, although in fact the purchaser had given the seller notes for a portion of the price. The court found the seller did not effectively preserve a vendor’s privilege because there was nothing in the recorded document to show that a portion of the purchase price remained unpaid. Although the mortgagee representative was present when the sale was passed and knew that the seller was financing part of the price, the mortgagee did not sign the sale in any capacity and was deemed by the court to be a “third person” entitled to rely on the public records.
Here, and even though the bank knew the loan proceeds were being used to finance construction on the particular property, the contractor was required by statute to record the proper notice of its contract with the owner in order to perfect its statutory privilege. The statutory rec-ordation requirements of a general contractor are not lessened or enervated by the fact that the adverse claimant is the lender of the funds to finance the construction. The Legislature has not so provided. Neither do we.
The fact that the bank financed the construction does not, as the contractor argues, give the bank notice that the general contractor intends to claim a privilege on the property, but “would have rather led [the bank] to conclude there would be no builder’s lien, since the money was being provided to pay for the work.” See Van Loan v. Heffner, 30 La.Ann. 1213, 1214 (La.1878). The contractor in Van Loan had not recorded his contract and similarly argued that the construction lender was not a “third person” entitled to rely on the absence of the contract from the public records to defeat the claimed privilege. The court did not agree, because the bank was not a party to the contract.
The bank is not shown to have been a “party” to the notice of contract. There is no evidence that any of the witnesses to the owner’s and the contractor’s signatures were representatives of the bank. The notice of contract is not notarized. On this record, we must conclude that the bank is a “third person” who may deal with the property in reliance on the public records, notwithstanding its assumed actual knowledge outside the public records that the owner was constructing improvements on the particular property.
The collateral argument by the contractor questions whether the bank was “actually prejudiced” by the deficient property description in the notice of contract. LRS 9:4811 B, before its 1988 amendment (see fn. 1), provided:
A notice of contract is not improperly filed because of an error in or omission from the notice in the absence of a showing of actual prejudice by a claimant or other person acquiring rights in the immovable.
The bank obtained a mortgage certificate from the clerk of court in February 1984, after its mortgage was recorded. The certificate contains the full legal description of the property and lists the bank’s mortgage as the only encumbrance and does not show the notice of contract which had been recorded before the mortgage. Both the notice of contract and the mortgage show the owner or mortgagor as D’Arbonne Lake Lodge, Inc.
The mortgage certificate was filed as an exhibit with the stipulated facts. There is no evidence to explain why the clerk did not show the notice of contract on the certificate. The most logical explanation is that the clerk of court could not tell from the property description in the notice of contract that it affected the specific property described on the mortgage certificate.
The omission of the notice of contract from the mortgage certificate convinces us of the importance and wisdom of the statutory requirements that proper identification of both the owner and the property be made in the written notice of contract. § 4811 A(2) and (3).
*359 The clerk of court listed the notice of contract on a lien certificate ordered by the contractor after the owner’s acceptance was filed. On this certificate, the property is described as “D’Arbonne Lake Lodge, Highway 33, Farmérville, La.,” the same description in the notice of contract. The bank did not order this certificate and cannot be expected to have used this description instead of the legal property description when it ordered its mortgage certificate.
From its mortgage certificate, the bank could have reasonably concluded that the contractor simply had not recorded the notice of contract and would not claim a privilege on the property superior to the bank’s mortgage. Even if a search of the public records by the clerk of court or by others on behalf of the bank had disclosed the fact that the notice of contract was recorded, the contents of the notice simply would not and do not reasonably identify what specific tract of land in whole or in part near Hwy. 33 was affected by the building contract.
§§ 4811, 4831 C
If the notice of contract had omitted, for instance, the price of the work contracted for, the bank would be required to show that it was “actually prejudiced” by the omission. § 4811 B. If the property description in the notice, for instance, by township and range (as contemplated by § 4831 C), contains an error (contemplated in § 4811 B) in a call or distance, lot number, or range, township, or section number, the claimant who is adverse to the contractor would also have to show that it was actually prejudiced by the error.
The statutory requirement that the notice contain a description that clearly and permanently identifies the property affected by the contract must be construed as having been intended to protect third persons as well as the general contractor. See § 4831 C and cases discussed supra. If the description clearly and permanently identifies the property, the contractor’s privilege is protected. If not, a third person’s mortgage primes the contractor’s privilege under the statutory scheme.
On the one hand, if the notice contains a description by section, township, and range, that omits a call or that contains an error (the wrong range number perhaps), the claimant adverse to the contractor in such circumstances may be required to show actual prejudice because of the omission or error in the description. § 4811 B.
On the other hand, the omission of a description of the immovable property is statutorily fatal under § 4831 C and the third-party claimant adverse to the contractor need not have to show actual prejudice by the omission.
We hold then that the phrase “D’Ar-bonne Lake Lodge, Highway 33, Farmer-ville, Louisiana” does not describe immovable property as required by § 4831 C. A lodge is a building. Highway 33, Farmer-ville, Louisiana, may be an address. Neither, however, describes immovable property upon which a lodge or other structure may be built under a building contract.
TIMELINESS OF CONTRACTOR’S STATEMENT OF CLAIM
Moreover, we find that even if the property had been fully and legally described in the notice of contract, the contractor’s privilege would not be enforceable. The contractor’s “statement of claim” was filed more than 60 days after the certificate of substantial completion was recorded.
Before its 1988 amendment, § 4822 B required the general contractor to file a statement of claim “within sixty days after the filing of the notice of termination of the work.” A notice of termination certifies one of these three things: that the work has been substantially completed by the contractor; or that the work has been abandoned by the owner; or that the contractor is in default under the terms of the contract. § 4822 E(3).
“Substantial completion” may coincide with the completion of all work, but may also be reached when the owner accepts the work or occupies the property, “although minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied.” § 4822 H.
*360 The certificate of substantial completion, or “notice of termination,” signed by the owner, the general contractor and the architect, was recorded on January 7, 1985. It is statutorily deemed “conclusive of the matters certified if it is made in good faith by the owner or his representative.” § 4822 E(4).
The contractor did not file its statement of claim until about a year later, on January 27, 1986. The contractor does not allege that the certificate of substantial completion was not made in good faith by the owner, but instead argues that the 60-day period to claim the final contract payment should run from the date the architect approved that payment (December 27, 1985), because the payment was not due under the terms of the contract until the architect approved the payment in writing. The contractor relies on LaMoyne-Clegg Dev. v. Bonfanti-Fackrell, 509 So.2d 43 (La.App. 1st Cir.1987). We find the reliance misplaced.
In LaMoyne-Clegg, the general contractor filed its statement of claim seven days after the owner filed a notice of termination certifying that the contractor was in default under the terms of the contract. The claim was not for work performed before the notice of termination was filed, but was for the “final payment” that was not due under the contract until the contractor submitted certain documents to the architect. Under those circumstances, the court ordered the contractor’s lien, or statement of claim, cancelled because the final payment was not due when the claim was filed.
When the statement of claim was filed in LaMoyne-Clegg, the contractor had 53 days in which to comply with the contract terms that would make the owner liable for the final payment. The court found that the statement of claim was improperly filed at that juncture. The court did not purport to extend or suggest that the lien period could be extended beyond 60 days after a notice of termination is proper and is filed.
The Legislature has unambiguously required a general contractor to file a statement of claim within 60 days of the filing of a certificate of substantial completion, and has recognized that substantial completion may be reached before all work called for under the contract has been performed. The Legislature has not, however, authorized extension of the statutory lien period beyond 60 days after the certificate of substantial completion is filed even if the final payment is not yet due under the terms of the contract. The statute must control insofar as third parties are concerned. The general contractor’s statement of claim was untimely under § 4822 B.
CONCLUSION
The contractor contends its privilege should be ranked above the bank’s mortgage because all the work called for under the contract was performed and enhanced the property’s value to the benefit of the bank. A similar argument was made unsuccessfully in National Bank of Commerce in New Orleans v. Justice, 212 So. 2d 711 (La.App. 4th Cir.1968). The court noted that the statutes creating and ranking privileges are to be strictly construed, and that a privilege claimed under the statutes will not be recognized unless the contractor meets every statutory requirement. There, as here, the claimant failed to do so.
DECREE
At the contractor’s cost, the judgment is AFFIRMED.

. The quoted language is from § 4811 A(2) as it read before it was amended by Act No. 685 of 1988, effective January 1, 1989. Because the notice of contract was filed and all other pertinent events took place before January 1, 1989, we apply the pre-amendment language.

. § 4822 B was also amended by Act 685 of 1988. See fn. 1.

. § 4821 ranks a "bona fide mortgage" ahead of the general contractor's privilege only if the mortgage is "effective as to third persons before the [general contractor’s privilege is] effective.” A collateral mortgage for periodic advances, such as the mortgage held by the bank, may not take effect as to third parties when it is recorded if the mortgage note is not pledged to the lender until a later date. See American Bank & Trust Co. v. F & W Const., 357 So.2d 1226 (La.App.2d Cir.), writ denied, 359 So.2d 1306 (La.1978) and People’s Bank & Trust Co. v. Campbell, 374 So.2d 741 (La.App.3d Cir.), writ denied, 376 So.2d 1268 (La.1979). Here, the mortgage note was pledged and the mortgage was recorded on the same day and we need not consider other circumstances in this opinion.