See also 825 F.Supp. 750.

### GIBRALTAR SAVINGS, F.A. in Conservatorship with the Resolution Trust Corporation

v.

### FIRST MORTGAGE CORPORATION, et al.

Civ. A. No. 90–392–A.

United States District Court, M.D. Louisiana.

May 6, 1993.

**FINDINGS OF FACT AND
CONCLUSIONS OF
LAW**

JOHN V. PARKER, Chief Judge.

This matter was tried before the court on February 8, 1993. Having carefully considered the evidence and argument of counsel, the court now renders it findings of fact and conclusions of law in accordance with Fed. Rule Civ.P. 52(a).

### Findings of Fact

1. In the early 1980's, defendant, First Mortgage Corporation, was engaged in the business of originating, selling and servicing mortgage loans.[1]

2. In September of 1983, First Mortgage entered into an agreement with Gibraltar Savings F.A., whereby Gibraltar agreed to purchase residential mortgage loans from First Mortgage. In the agreement, First Mortgage warranted that each loan would be duly executed, acknowledged and recorded, and that each of the mortgages would be covered by valid and enforceable insurance through a private mortgage insurance company.

3. By act of sale dated October 31, 1983, Fred M. Roberson and Jo Ellen Roberson sold their residence on Sophia Lane in Shreveport, Louisiana, to Alvin Wade Gore and Cheryl Barron Gore. The stated consideration for the sale is $21,000 cash in hand and assumption of the mortgage and note executed by the Robersons in 1981. The act of sale was recorded in the public records in Caddo Parish on November 2, 1983.

4. By act of sale dated October 31, 1983, the Robersons purchased a house located on Cobblestone in Shreveport from William James Phillips and Sandra Jean Cason Phillips. The consideration stated in that act of sale is $210,000 cash in hand. The act of sale was recorded in the Caddo Parish public records on November 2, 1983.

5. On October 31, 1983, the Robersons executed a mortgage on the Cobblestone property in favor of The First National Bank of Shreveport in the principal amount of $200,000. Thus, comparing the amount of

S. Layne Lee, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for the Resolution Trust Corp., in its Capacity as Receiver for Gibraltar Savings, F.A.

John O. Shirley, Sr., Roedel, Parsons, Forrester, Hill & Koch, Baton Rouge, LA, for First Mortg. Corp. and Premier Bancorp.

Susan F. Clade, Christopher M. Guidroz, Susan Beth Kohn, Simon, Peragine, Smith & Redfearn, New Orleans, LA, for Verex Assurance, Inc.

1. First Mortgage has since been succeeded by Premier Bancorp.

the mortgage with the amount of the purchase price on the act of sale, it appears that the Robersons may have made a $10,000 down payment.

6. The evidence establishes that a common practice for home buyers at the time was to acquire interim financing while awaiting approval of permanent financing. The court finds that the First National loan closing was such an interim financing arrangement, pending application by the Robersons for permanent financing with First Mortgage.

7. In connection with the permanent loan application, First Mortgage applied for mortgage loan insurance from Verex Assurance, Inc. A commitment for insurance was issued by Verex, effective October 27, 1983, subject to certain conditions, including a sales price of $210,000 and a loan to value ratio of 90%, which essentially means the Robersons had to make a ten percent down payment in the amount of $21,000.

8. A certificate of insurance was issued by Verex, effective December 2, 1993, subject to "proof of sale of real estate [i.e. the Sophia Lane property] showing net proceeds of at least $14,000".

9. On December 2, 1983, the Robersons executed an adjustable rate note in favor of First Mortgage, in the amount of $189,000, secured by a mortgage given the same day on the Cobblestone property.

10. On December 12, 1983, First Mortgage sold the Roberson loan to Gibraltar.[2]

11. The Robersons ultimately defaulted on the loan and Verex denied a claim for loss submitted on behalf of Gibraltar.

12. The court received evidence (subject to objection by First Mortgage) that clearly establishes the Gores did not pay the Rober-

sons $21,000 in cash as recited in the recorded act of sale for the Sophia Lane property.

13. There is no evidence to show that the Robersons made any down payment on the Cobblestone property at the First Mortgage loan closing. The documentation submitted in connection with the interim loan is perhaps indicative of a $10,000 down payment. At the time of the permanent financing, the payoff to First National was $191,112.66, which suggests an additional $9,000 may have been paid on the $200,000 interim loan. Consequently, the documentary evidence indicates that the Robersons may have paid as much as $19,000 by the time of the permanent financing.

■ 14. However, according to Dr. Roberson, he did not make any down payment on the Cobblestone property. Dr. Roberson thought the purchase price was $189,000 rather than $210,000.[3] Dr. Roberson's recollections are neither precise nor reliable. It is clear from the evidence that others drew checks for his signature and he was not at all sure how much he paid or to whom. In any event, the evidence clearly shows that the Robersons did not make a down payment of $21,000 on the Cobblestone property.

## Conclusions of Law

1. The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345.

2. The issues before the court relate solely to Verex's liability under the mortgage insurance policy. The parties have stipulated that if the court finds the insurance policy to be valid, RTC will be entitled to recover from Verex. On the other hand, if the court finds that no coverage exists, then First Mortgage will be liable for breach of warranty.

---

2. The Resolution Trust Corporation, in its capacity as receiver for Gibraltar, has acquired all of Gibraltar's interest in this matter.

3. While First Mortgage objects to Dr. Roberson's testimony as inadmissible parol evidence contradicting the public records, the court finds this objection lacks merit. To begin with, First Mortgage points to no authentic act or act under private signature actually stating a down payment of any sort was made by the Robersons. As

Dr. Roberson's testimony does not squarely contradict any authentic act or one under private signature, the parol evidence rule is inapplicable. La.Civ.Code art. 1848. Second, the court finds that the objection based upon the public records doctrine lacks merit for much the same reasons. Simply put, First Mortgage clearly did not rely upon the public records in this context because the public records do not show that a $21,000 down payment was made, they are at most indicative of a $10,000 payment.

3. Verex contends that the loan insurance policy was issued contingent upon certain "conditions precedent" that were not met, hence the risk never attached. In particular, Verex contends that the certificate of issuance was conditioned upon: (i) the Robersons purchasing the Cobblestone property for $210,000 and making a ten percent cash down payment toward the purchase price, and; (ii) the Robersons selling their prior residence on Sophia Lane with net proceeds of at least $14,000.

■ 4. A condition precedent is one that must be performed before the contract becomes effective and calls for the happening of some event or the performance of some act (after the terms have been agreed upon) before the contract shall be binding on the parties. *Benton Casing Service, Inc. v. Avemco Ins. Co.*, 379 So.2d 225 (La.1979). See also, Couch on Insurance 2d § 36:46.

■ 5. A condition precedent is a contractual limitation to the attachment of the risk, Couch, supra. Accordingly, it must be set forth in clear and unambiguous language and any ambiguity must be interpreted in favor of the insured. Id.

6. The commitment and certificate of insurance clearly are conditioned upon the Robersons receiving at least $14,000 in cash in connection with the sale of their prior residence on Sophia Lane and their making a down payment of $21,000 towards the purchase price of the Cobblestone property.

■■ 7. As previously noted, First Mortgage has objected to parol evidence contradicting the recital in the Sophia Lane act of sale that the Gores paid $21,000 in cash to the Robersons for that property. The court overrules the objection. Parol evidence may be admitted when offered to prove sim-

ulation, La.Civ.Code art. 1848. *Succession of Montgomery*, 506 So.2d 1309 (La.App. 2d Cir.1987), writ denied, 512 S.2d 1181 (La. 1987). Moreover, the parol evidence rule has questionable applicability in this action in view of the fact that this suit is between two third persons. See *Hobbs v. Central Equipment Rentals, Inc.*, 382 So.2d 238 (La.App. 3d Cir.1980), writ denied, 385 So.2d 785 (La. 1980).

■■ 8. First Mortgage additionally objects to this evidence claiming reliance on the public records. This objection is overruled in view of the well established rule that the public records doctrine does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. *Camel v. Waller*, 526 So.2d 1086 (La.1988). The recordation of an instrument does not have the effect of making all recitals contained therein true. *Gulf Union Mtg. Corp. v. Michael & Barber Const. Co.*, 251 So.2d 459 (La.App. 1st Cir.1971). Therefore, the court concludes that the public records doctrine does not preclude Verex from introducing proof that the Robersons did not realize $14,000 from the sale.[4]

■ 9. Therefore, the evidence establishes that neither condition was met, i.e. the Robersons did not receive at least $14,000 from the sale of the Sophia Lane property and they did not make a $21,000 down payment on the Cobblestone property. Consequently, it is clear that the risk did not attach and Verex is not liable under the mortgage insurance policy.

10. Thus, the court finds in accordance with the stipulations of the parties that First

4. First Mortgage cites *City Bank & Trust Co. v. Caneco Const. Inc.*, 341 So.2d 1331 (La.App. 3d Cir.1976), writ denied, 345 So.2d 52 (La.1977), where the court excluded parol evidence offered by a vendor to vary the recital in his recorded deed that he was paid in full in view of a third party bank's reliance on the recorded act. There is no doubt that a vendor may not assert a vendor's lien in prejudice to a third person's rights if his act of sale indicates complete payment. A third party bank is entitled to rely on the public records in determining whether a ven-

dor's lien exists since this is an interest that is subject to recordation. *Alison Mtg. Inv. Trust v. BPB Contractors, Inc.*, 362 So.2d 1203 (La.App. 4th Cir.1978) Here, we do not have a vendor claiming a vendor's privilege. While First Mortgage may have relied upon the public records to determine that the Robersons had no vendor's lien, the court does not find that the public records doctrine permits First Mortgage to rely upon the recital as proof that payment was in fact received as against a third party mortgage insurer.

Mortgage is liable to RTC for breach of warranty.

Judgment will be entered accordingly.