815 So.2d 301 (2002)
HIBERNIA NATIONAL BANK
v.
BELLEVILLE HISTORIC DEVELOPMENT, L.L.C.
No. 2001-CA-0657.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 2002.
Writ Denied June 14, 2002.
*302 Harry A. Rosenberg, David L. Patron, Phelps Dunbar, L.L.P., New Orleans, LA, for Plaintiff/Appellee.
Fred L. Herman, Michael D. Allday, Lionel J. Favret, III, Law Offices of Fred L. Herman, New Orleans, LA, and Eric A. Kracht, Kracht & Graves, L.L.P., Baton Rouge, LA, for Intervenor/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY).
*303 MICHAEL E. KIRBY, Judge.
GCI Construction, Inc., Intervenor, appeals a judgment of the trial court holding that it did not comply with the requirements of the Private Works Act, La. R.S. 9:4801 et seq., and thus, its lien was invalid.

STATEMENT OF THE FACTS
On December 21, 1999 Hibernia National Bank ("Hibernia"), initiated a foreclosure proceeding against Belleville Historic Development, L.L.C. ("Belleville"). GCI Construction, Inc. ("GCI") intervened in the proceeding asserting it had a construction lien superior in rank to Hibernia's mortgage on the property. In its foreclosure action Hibernia sought a judicial sale of the property owned by Belleville known as the Belleville Condominiums located in New Orleans, Louisiana.
As the general contractor for Belleville, GCI constructed the condominium complex pursuant to a construction contract entered into by GCI and Belleville. GCI's Notice of Construction Contract was recorded in the Mortgage Office of Orleans Parish on March 26, 1998, at 3:27 p.m. The mortgage granted by Belleville in favor of Hibernia was recorded three minutes later, at 3:30 p.m. However, in the mortgage office, the mortgage was given a lower recordation number than GCI's Notice of Contract.
Belleville subsequently breached the contract with GCI by failing to make payments for the work performed. GCI stopped work on the project. Belleville filed a Notice of Acceptance, or Affidavit of Substantial Completion of the project on December 23, 1998, even though work was still ongoing in Phase I and Phase II had not even begun. GCI was not given any notice of the filing.
When GCI learned of the filing of the Affidavit, it filed its Contractor's Lien on February 9, 1999, against the Belleville property. The lien set forth that Belleville was in default for the unpaid portion of the project totaling FOUR HUNDRED TWENTY THOUSAND FIFTEEN DOLLARS AND 94/100 ($420,015.94) inclusive of interest and costs, the amount which GCI believed to be the unpaid balance on the Contract.
Before intervening in the foreclosure proceeding which is the subject of this appeal, GCI had already filed a separate action to enforce its claim against Belleville for the amount due under the contract, and GCI recorded a lis pendens against the property. Belleville filed a Writ of Mandamus to have the lien removed and also sought damages from GCI alleging that the lien exceeded the amount of the claim and that the lien was impeding the completion of the contract. The trial court consolidated the GCI claim and the Belleville mandamus action into Belleville Historic Development, L.L.C. v. GCI Construction, Inc., Proceeding No. 99-05913 c/w 99-2604, which had been allotted to Division E of the Civil District Court. The consolidated cases were referred to arbitration and resulted in an award in favor of GCI. The arbitrator's award was made a judgment of the trial court and was affirmed by this court.
On June 23, 2000, the trial court began hearings to determine the ranking of the construction lien of GCI versus Hibernia's mortgage. The trial court found that GCI's construction lien was invalid because GCI did not comply with the requirements of the Private Works Act.
Specifically, the trial court, adopting portions of Hibernia's post-trial brief, found: (1) GCI misidentified the contractual obligation at issue, (2) GCI misrepresented the nature of the contractual obligation, (3) GCI failed to identify the amount of the contractual obligation, (4) GCI failed to itemize the elements comprising *304 its claim under the contractual obligation, (5) GCI failed to reasonably and clearly identify the property subject to the contractual obligation, and (6) the totality of the foregoing flaws makes GCI's attempted lien defective under the requirements of the Louisiana Private Works Act.

STATEMENT OF THE LAW
The Private Works Act grants contractors a privilege on an immovable to secure the price of their work. La. R.W. 9:4801(1). Written notice or a contract between a general contractor and an owner shall be filed for registry in the office of the recorder of mortgages of the parish in which the work is to be performed. La. R.S. 9:4811(A) and 9:4831. The privilege granted by the Act is effective when the notice of contract is filed as required by La. R.S. 9:4811(A). A general contractor who has a privilege pursuant to La. R.S. 9:4801 and who has filed a notice of contract pursuant to La. R.S. 9:4811(A) and 9:4831 shall file a statement of his privilege within sixty days after the filing of a notice of termination or substantial completion of the work. La. R.S. 9:4822(B).
Two questions are at the heart of this dispute. First, did GCI's lien meet the requirements of La. R.S. 9:4822(G) of the Private Works Act? If the answer to this question is affirmative, then we ask: Was GCI's lien filed prior to Hibernia's mortgage, thereby outranking it?

VALIDITY OF THE LIEN
La. R.S. 9:4822(G),[1] provides that a statement of a claim or privilege:
(1) Shall be in writing.
(2) Shall be signed by the person asserting the same or his representative.
(3) Shall reasonably identify the immovable with respect to which the work was performed ...
(4) Shall set forth the amount and nature of the obligation giving rise to the claim or privilege and reasonably itemize the elements comprising it including the person for whom or to whom the contract was performed, material supplied, or services rendered.
We compare these statutory criteria to the Affidavit Creating the Contractor's Lien, which was filed by GCI. The relevant parts state:
AFFIDAVIT CREATING CONTRACTOR'S LIEN
* * *
BEFORE ME, the undersigned authority, personally came and appeared:
AUGUST P. GRIMALDI
President of GCI Construction, Inc., a Louisiana corporation engaged in the business of general contracting and commercial and industrial construction work, who, being first duly sworn, did depose and say that:
On March 25, 1998 GCI Construction, Inc. entered into a contract with Belleville Historic Development, L.L.C., a limited liability company organized under the laws of the State of Louisiana, to furnish labor material to construct twenty-one (21) condominium units at Belleville Condominiums, a project of Belleville Historic Development, L.L.C. Said work was performed as per the afore-mentioned *305 contract. The project is located at 913 Pelican Ave., New Orleans, (Algiers), La.
The total amount of the aforementioned contract, as adjusted for all change orders, totaled $782,278.35. GCI Construction, Inc. invoiced said amount under various invoices to Belleville Historic Development, L.L.C. As of this date GCI Construction, Inc. has been paid $362,262.42 leaving a balance due under this contract of $420,015.94, all of which is past due and owing.
* * *
(A detailed legal description of the property follows.)
* * *
This affidavit is made for the purpose of preserving the lien and privilege granted by law (R.S. 9:4801 et seq.) to contractors; said debt, plus legal interest, attorney fees for the preparation and filing of this lien which are invoiced at $250.00, and all costs, is past due, owing and unpaid, and all just credits have been allowed.

* * *
Affidavit Creating Contractor's Lien
A review of the Affidavit (statement of lien) reveals that it is in writing, and is signed by the person asserting the lien. The trial court, by adopting a section of Hibernia's post trial brief erred when it found that the property was not reasonably identified because of a typographical error. The municipal address was listed as 913 Pelican Avenue instead of 813 Pelican Avenue. However, we find that the discrepancy to be of no moment for two reasons. First, the notice of contract described the property with a lengthy legal description annexed thereto as "Exhibit A." Nowhere is there a municipal address used to identify the work site. Secondly, we note that pursuant to La. R.S. 9:4831(C) a notice of contract, notice of termination, statement of claim or privilege or a notice of lis pendens is required to contain a property description sufficient to clearly and permanently identify the property. The statute specifically provides that naming the street or mailing address, without more, is not sufficient to comply with its mandate. Further it specifically states that a description which includes the lot and/or square and/or subdivision or township and range shall meet its requirements. Therefore, we conclude that under the statute, no third party could have relied on the municipal address and could only have considered the legal descriptions. Finally, we note the legal description in the affidavit creating lien, while not a verbatim copy of the property description in the notice of contract, does clearly identify the identical lots and square. There was no confusion as to the identity of the property.
Given that La. R.S. 9:4822(G) only contains four requirements, and we find three of the four are clearly satisfied, we are left to discuss the last requirement, La. R.S. 9:4822(G)(4).
Hibernia argues correctly that the Private Works Act is in derogation of general contract law, and thus must be strictly construed. Nevertheless, in interpreting the Private Works Act, we must not overlook the legislative intent and fundamental aim of the act, which is to protect materialmen, laborers and subcontractors who engage in construction and repair projects. La. R.S. 9:4801 et seq.; Bernard Lumber Company, Inc. v. Lake Forest Construction Co., Inc., 572 So.2d 178 (La.App. 1 Cir.1990). Moreover, strict construction cannot be so interpreted as to permit purely technical objections to defeat the real *306 intent of the statute, which is to protect materialmen, laborers and subcontractors who engage in construction projects. Authement's Ornamental Iron Works v. Reisfeld, 376 So.2d 1061 (La.App. 4th Cir. 1979); Morgan v. Audubon Const. Corp., 485 So.2d 529 (La.App. 5 Cir.,1986).
With the aforementioned legislative intent in mind, we thoroughly reviewed the record. We found that the lien sets forth an amount, namely $420,015.94. The fact that the exact amount owed was in dispute, is not sufficient to invalidate the lien per se.
We also find that the nature of the obligation giving rise to the claim was set forth in the lien as well as a reasonable itemization of the elements comprising it with the following language:
... to furnish labor material to construct twenty-one (21) condominium units at Belleville Condominiums, a project of Belleville Historic Development, L.L.C. Said work was performed as per the aforementioned contract.
Affidavit Creating Contractor's Lien
The last sentence cited above, incorporates the Notice of Contract that was filed in the public records.
The trial court ignored the purpose of filing a lien affidavit. The comments following R.S. 9:4822 explain at section (G) that: "... The purpose of a statement or claim of privilege is to give notice to the owner (and contractor) of the existence of the claim and to give notice to persons who may deal with the owner that a privilege is claimed on the property.... Technical defects in the notice should not defeat the claim as long as the notice is adequate to serve the purposes intended."
Under the Public Records Doctrine, technical defects in contractor's liens, as well as other instruments such as mortgages, settlement statements, etc., are not sufficient to defeat the lien or other recordation where it is evident that the instrument meets the substantive criteria. La. R.S. 13:4104 and 35:2.1; Morgan v. Audubon Construction Corp., 485 So.2d 529 (La. App. 5 Cir.1986); See also the treatment of a recorded settlement statement in Bank of Bernice v. D'Arbonne Lake Lodge, Inc., 541 So.2d 354, 357 (La.App. 2 Cir. 1989).
Following this rationale, we find no substantial defects in this lien. Therefore, we find the lien to be valid.
Also noteworthy is the question of the validity of the Affidavit of Substantial Completion of the project, or Notice of Acceptance, which necessitates the filing of the lien. La. R.S. 9:4822(E)(4) states that a notice of termination of the work shall be conclusive if it is made in good faith. There is evidence in the record that the notice of termination of work filed by Belleville was not done in good faith, as it was filed before the termination of Phase I of the project and prior to the beginning of Phase II of the project. Because we find the lien valid per se, we will not discuss what effect, if any, this would have on La. R.S. 9:4822(B), i.e. the limit of time within which GCI had to file its lien in this case. For, had the work truly been terminated or abandoned, GCI may have filed an even more detailed lien, making this litigation unnecessary.

RANKING
The determination of the ranking of the Contractor's Lien and Hibernia's Mortgage is based upon the time of filing. La. R.S. 9:4821. Since we have found the Affidavit Creating Contractor's Lien is valid, it is effective as to third persons and relates back to the filing of the Notice of Construction Contract on March 26, 1998 at 3:27 p.m., pursuant to La. R.S. 9:4820(A)(1).
*307 GCI's Affidavit Creating Contractor's Lien related back to the Notice of Contract, which was filed on March 26, 1998, at 3:27 p.m. While Hibernia's Mortgage was filed that same day only three minutes later, at 3:30 p.m., it is the time of filing that controls. La. R.S. 9:5141 provides that all written instruments filed with the recorder of mortgages "shall be immediately indorsed with the date, hour and minute of filing." Subsection B of that statute specifically states: "All such instruments shall be effective against all persons from the time of their filing." [Emphasis added.] Hibernia's argument that the instrument number or sequence order given the document by the recorder controls simply does not comport with the unambiguous words of the statute.
For the aforementioned reasons, we find GCI's lien valid, and we find that its Contractor's Lien primes Hibernia's mortgage. Accordingly, GCI is entitled to the proceeds of any foreclosure prior to Hibernia, and we reverse the judgment of the court below.
REVERSED.
NOTES
[1] The purpose of the lien is to put the public on notice of a claim, to identify the party making the claim, identify the party against who the claim is being made, the nature of the agreement, and the property affected by the lien claim. This is to provide other potential creditors, i.e. lenders, with knowledge of the risk they assume.