HUGHES, J.
| ¡.This is an appeal from a district court’s award of damages for the condemnation and subsequent demolition of a home. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
In September of 2005 the City of Baton Rouge/Parish of Hast Baton Rouge (“City/Parish”) instituted a condemnation proceeding seeking to condemn and demolish a house located at 840 South 12th Street in Baton Rouge, pursuant to LSA-R.S. 38:4761, et seq. The City/Parish asserted in the proceeding that the house was subject to condemnation, citing the following primary reasons: the roof was 50% deteriorated; the rafters, ceiling joists, walls, and floors were 25% deteriorated; it was “open to unauthorized persons;” and conditions existed therein that “could cause loss or damage to persons in or around [the] premises.” Following notice to the record owner of the property, Ruby McClendon, through a curator pursuant to LSA-R.S. 33:4767, and after a public hearing, the City/Parish Metropolitan Council decreed that the building at issue was “in a dilapidated and dangerous condition which endangers the public welfare to such an extent that repairs must be made and defects corrected as specified.” Upon failure of the owner to “repair, remove or demolish said building” within ten days from the October 12, 2005 decision, the Department of Public Works was “instructed to proceed with removal and demolition at [the] owner’s expense in accordance with law.” The subject building was demolished by the Department of Public Works on January 18, 2006.
Anthony Leroy Evans and Cornell Le-garde filed the instant suit for damages on January 18, 2007 (via facsimile), contending they were the lawful owners of the property located at 840 South 12th Street, by virtue of a | gdonation in their favor from Ruby McClendon on February 9, 2004, and that their property was destroyed by the City/Parish without prior notice to them. In their petition, the plaintiffs stated that, on January 9, 2007, they received a notice from the City/Parish of a condemnation proceeding instituted as to property located at 236 South 12th Street, but that they did not own that particular property. The City/Parish and its insurer were made defendants to the suit, and in response to the suit, the City/Parish asserted that the official record of both the parish clerk of court and tax assessor showed that Ruby McClendon was the owner of the 840 South 12th Street property at all pertinent times.
During the April 28, 2010 trial of this matter, the February 9, 2004 act of donation from Ruby McClendon to the plaintiffs was introduced into evidence. It stated Ms. McClendon’s intent to donate the property located at “840 South 12th *578 Street” to the plaintiffs, and contained the following legal description for the donated property:
Land 600 Imp. Lot 8 PT. Sqr. 6, Subd. Young. Partial
current property description SOUTH PARK OF LOT 8 SQ 6 or 211
(extended description) [sic]
The act of sale by which Ms. McClendon acquired the 840 South 12th Street property was also introduced into evidence, showing that United Companies Lending Corporation conveyed the property to Ms. McClendon on February 19, 1992; the legal description of the property contained therein was as follows:
A certain lot or parcel of ground, with the buildings and improvements thereon, situated in that part of the City of Baton Rouge, Louisiana, known as SUBURB HART, and designated according to the official map of the City of Baton Rouge, made by R. Swart, C.E., in 1910, as LOT NUMBER SEVEN (7), SQUARE NUMBER ONE (1), or Three Hundred Forty-nine (349), measuring Thirty-five (35) feet front on Plum Street 14(now South Twelfth Street) by a depth of One Hundred (100) feet between parallel lines.
A January 9, 1989 act of sale was also introduced at the trial of this matter, which conveyed the property located at 236 South 12th Street to Ms. McClendon from L.B. Young and Aline Russell Young; the legal description of that property was stated therein as follows:
A certain fractional lot or parcel of ground, together with all the buildings and improvements thereon, situated in that part of the City of Baton Rouge, State of Louisiana, known as SUBURB YOUNG, and being the Southern Portion of LOT NUMBER EIGHT (8), of SQUARE NUMBER SIX (6), or TWO HUNDRED ELEVEN (211), according to the official map of the City made by R. Swart[,] City Engineer, 1910, said fractional lot or parcel of ground measuring twenty-seven (27) feet front on the West side of Liberty Street by a depth between parallel lines of one hundred forty (140) feet; said lot being subject to servitudes of record and as shown on said map.
At the conclusion of the trial, the district court judge issued oral reasons for judgment, wherein he stated that the issues to be resolved by the court were: (1) who owned the property; (2) whether the owners had proper notice of the demolition; and (3) if they did not, what damages the plaintiffs may have suffered. The court acknowledged the pertinent conveyance records had been submitted into evidence, but stated: “[N]either plaintiff[s] nor the defense brought anyone in to verify what is the accurate description of the property to show that the City did or did not demolish the house that they intended to demolish.” The court also noted with interest that the City/Parish actually demolished the houses at both 236 South 12th Street and 840 South 12th Street. The court further stated that he found evidence presented by the defense deficient with respect to the reasons why the house had been declared condemned and as to whether the curator for Ms. McClendon had fulfilled her duties as a curator. The court also questioned whether the City/Parish Metropolitan Council’s condemnation decree was in | svalid form, since no signature was affixed thereto. The court then concluded: that the defendants had not established that either the plaintiffs or Ms. McClendon received proper notice of the condemnation; that, as a result, the City/Parish was liable for demolishing the home at 840 South 12th Street; and that the plaintiffs were entitled to damages in *579 the amount of $25,000.00 for the demolition of the home at 840 South 12th Street. A judgment was signed in accordance with the court’s decision on May 7, 2010. The City/Parish appealed this judgment.
LAW AND ANALYSIS

Condemnation Procedure

The governing authority of any municipality may condemn and cause to be demolished or removed any building or structure within the parish or municipality when it is in a dilapidated and dangerous condition, which endangers the public welfare. LSA-R.S. 38:4761. Before any building or structure may be condemned, a written report recommending the demolition or removal of the building must be signed and submitted by a city official or other person authorized to act in such matters. Notice must then be served on “the owner” of the building or structure, requiring him to show cause at a meeting of the governing authority why the building or structure should not be condemned. See LSA-R.S. S3:4762(A).
If, after the hearing, in the opinion of the governing authority the facts justify it, an order shall be entered condemning the building and ordering that it be demolished or removed within a certain delay. If repairs will correct the dilapidated, dangerous, or unsafe condition, the governing authority may grant the owner the option of making such repairs, but in such a case the general nature or extent of the repairs to be made, the time thereof, and the defects to be corrected shall be specified in the decision of the | (¡governing body. The decision and order of the governing authority shall be in writing and shall be final unless appealed from within five days. See LSA-R.S. 33:4763. Prior to the demolition or removal of the building or structure by the municipality, notice shall be served on the owner, his agent, or upon any attorney appointed to represent the owner, and on any occupant of the building, if any, giving the time when work will begin upon the demolition or removal of the building or structure. In the event the owner or occupant of the building or structure fails or refuses to comply with the decision of the governing authority and fails to appeal therefrom within the legal delay provided, the governing authority may proceed with the demolition or removal of the condemned building or structure. The governing authority is not liable for any damages resulting from the demolition of the building or structure if “all procedural protections and substantive restraints have been adhered to.” See LSA-R.S. 33:4765(B), (C), and (E).
In the instant case, the plaintiffs contend that they were “the owner[s]” of the property located at 840 South 12th Street in Baton Rouge and were entitled to notice of the condemnation proceeding, pursuant to LSA-R.S. 33:4762, but that the City/Parish did not notify them as required by law. Nevertheless, in order to prevail in this suit, the plaintiffs first had the burden to prove they were in fact “the owner[s]” of the property in question.[1]
*580 | rjThe Public Records Doctrine
The Louisiana public records doctrine generally expresses a public policy that an interest in real estate must be recorded in order to affect third persons. Simply put, an instrument in writing affecting immovable property that is not recorded is null and void except between the parties.[2] Cimarex Energy Co. v. Mauboules, 2009-1170, p. 18 (La.4/9/10), 40 So.3d 931, 943. The public records doctrine has been described as a negative doctrine because it does not create rights, but rather, denies the effect of certain rights unless they are recorded. Id., 2009-1170 at p. 19, 40 So.3d at 944. In explaining the negative nature of the doctrine, the Louisiana Supreme Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. The primary focus of the public records doctrine is the protection of third persons against unrecorded interests. Id., 2009-1170 at p. 20, 40 So.3d at 944. Simply put, the rule that what is not recorded is not effective does not mean that what is recorded is effective in all events, despite any defect contained therein. See Id. Stated another way, the fact that a document is recorded does not mean that it is Invalid or that the person with record title is in fact the owner.[3] See Peter S. Title, 1 Louisiana Practice Series, Louisiana Real Estate Transactions, § 8:16 (2d ed.).
In the instant case, a comparison of the property description contained in the donation from Ms. McClendon to the plaintiffs (which the plaintiffs contend was intended to convey title to the property located at 840 South 12th Street) with the acts of sale to Ms. McClendon of both the *581 840 South 12th Street property and the 236 South 12th Street property, reveals that the property description found in the donation to the plaintiffs appears to have been taken from the 286 South 12th Street act of sale rather than the 840 South 12th Street act of sale, even though the act of donation to the plaintiffs also references the municipal address of “840 South 12th Street.”
The description of immovable property is very important, because in order for real estate to be conveyed or mortgaged, it must be sufficiently described. A description of real estate that is adequate for the purposes of sales or mortgages is often called its “legal” description. A legal description of property definitely locates the property and is sufficient to locate the property without oral testimony. The legal description of real estate in a sale, mortgage, or other instrument is usually derived from prior descriptions and surveys in the present owner’s chain of title. See Louisiana Real Estate Transactions, § 2:1.
Official government surveys create, and do not merely identify, the boundaries. Where public lands were disposed of by the federal government |ato the State of Louisiana or to private persons according to lines appearing on the official plat of government surveys approved by the Surveyor General, the location of the lines as shown on the official plat is controlling. Louisiana Real Estate Transactions, § 2:5 (citing State v. Aucoin, 206 La. 787, 20 So.2d 136 (1944), and State v. Ward, 314 So.2d 383 (La.App. 3 Cir.), writ denied, 319 So.2d 440 (La.1975)).
Descriptions of property in Louisiana may be by reference to: (1) official governmental surveys, (2) metes and bounds,[4] or (3) plats of subdivision. Legal descriptions often combine the three forms of descriptions. Common in urban areas is the description by reference to the plat of subdivision, by square or block and lot. Plats or maps of subdivisions are most commonly found in residential areas that have been subdivided by commercial developers, although platted subdivisions can be used in rural areas as well. When real estate has been platted by square or block and lot, according to a recorded plat or map as used frequently in metropolitan areas, a description by square or block and lot, followed by the subdivision, is a sufficient legal description without combining a metes and bounds description of the lot, since a conveyance of land according to a recorded plat or map incorporates by reference all of the notes, lines, descriptions, and landmarks of the plat. Louisiana Real Estate Transactions, §§ 2:13 and *582 2.14 (citing Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 82 L.Ed. 566 (1888)).
| inThe municipal number or address of the improvements on real estate may not be a sufficient legal description for a sale or mortgage. See Louisiana Real Estate Transactions, § 2:21.[5] However, we find it unnecessary to resolve this issue in order to dispose of the instant appeal. We conclude instead that the plaintiffs failed to establish by a preponderance of the evidence that they were in fact the record owners of the 840 South 12th Street property.
The plaintiffs produced an act of donation purporting to transfer ownership of the 840 South 12th Street property from Ms. McClendon to them. However, the legal description of the property donated was shown by parish conveyance records (namely, Ms. McClendon’s title documents to both 840 and 236 South 12th Street, also introduced into evidence) to be the same property that she had acquired, and that had been denominated in her title, as 236 South 12th Street. This evidence was substantiated by the testimony of City/Parish Constructions Inspector, Mike Earnheart.
Mr. Earnheart testified that, at the time the home at issue herein was condemned and demolished, it was his job to inspect buildings to determine if they were “condemnable.” After inspecting the 840 South 12th Street property on June 27, 2005, Mr. Earnheart looked up the property description on “a map” in his office. He then went to the parish tax assessor’s office and obtained the owner’s name from the assessor’s records, based on the Inproperty description. He determined that the owner, at that time, of the 840 South 12th Street property was Ruby McClendon.
Based on the records he reviewed, Mr. Earnheart testified that he determined that the property description of the 840 South 12th Street property was “Lot 7, Square 349, Subdivision Hart.” The property description contained in the February 19, 1992 act of sale, purporting to convey title to the 840 South 12th Street property to Ms. McClendon, stated in pertinent part: “SUBURB HART, ... LOT NUMBER SEVEN (7), SQUARE NUMBER ONE (1), or Three Hundred Forty-nine (349).... ” In contrast, the property description contained in the January 9, 1989 act of sale purporting to convey title to the 236 South 12th Street property to Ms. McClendon, stated in pertinent part: “SUBURB YOUNG, ... LOT NUMBER EIGHT (8), of SQUARE NUMBER SIX (6), or TWO HUNDRED ELEVEN (211) ...,” and the property description in the donation by Ms. McClendon to the plaintiffs stated in pertinent part: “Subd. Young ... LOT 8 SQ 6 or 211.... ”
*583 Thus, we conclude that the record does not establish by a preponderance of the evidence that the plaintiffs owned the property located at 840 South 12th Street. Since the plaintiffs did not establish their ownership of the property, they were not entitled to recover any damages in connection with the demolition of the home located on the property. Consequently, the judgment rendered in favor of the plaintiffs was in error.[6]
CONCLUSION
For the reasons assigned herein, the judgment of the district court, in favor of Anthony Leroy Evans and Cornell Le-garde and against the City of |]2Baton Rouge/Parish of East Baton Rouge, is hereby reversed. All costs of this appeal are to be borne by the appellees, Anthony Leroy Evans and Cornell Legarde.
REVERSED.
GUIDRY, J., concurs.

. Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law. LSA-C.C. art. 477(A). The ownership of an immovable is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the immovable. The transfer of ownership takes place between the parties by the effect of the agreement and is not effective against third persons until the contract is filed for registry in the conveyance records of the parish in which the immovable is located. LSA-C.C. art. 517. The ownership of an immovable is transferred by a contract, which is often designated in Louisiana doctrine and jurispru *580 dence as an “act translative of ownership.'^ Examples of acts translative of ownership are sales, donations, or exchanges of property. The contract must “be clothed with the formalities required by law.” LSA-C.C. art. 517, 1979 Revision Comments (c) and (d). At the time of Ms. McClendon's February 9, 2004 donation to plaintiffs, LSA-C.C. art. 1536 provided, in pertinent part: "An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property ... under the penalty of nullity.” Further, former LSA-C.C. art. 1538 provided: "A donation inter vivos, even of movable effects, will not be valid, unless an act be passed of the same, as is before prescribed. Such an act ought to contain a detailed estimate of the effects given.”

. The public records doctrine is now generally set forth in LSA-C.C. art. 3338. See Cimarex Energy Co. v. Mauboules, 2009-1170 at p. 19, 40 So.3d at 943. Article 3338 provides:
The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
(1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
(2) The lease of an immovable.
(3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
(4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Sub-paragraphs (1) through (3) of this Article.

. This concept has been codified in LSA-C.C. art. 3341 by 2005 La. Acts, No. 169, § 1, effective July 1, 2006, which provides:
The recordation of an instrument:
(1) Does not create a presumption that the instrument is valid or genuine.
(2) Does not create a presumption as to the capacity or status of the parties.
(3) Has no effect unless the law expressly provides for its recordation.
(4) Is effective only with respect to immov-ables located in the parish where the instrument is recorded.

. Metes are lengths such as feet, yards, and rods. Bounds are boundaries, either natural or artificial. A typical metes and bounds description draws a "picture” of the property beginning with reference to a public and recognizable point, known as the "commencing point.” the description then expresses the distance from the commencing point to a point, the "point of beginning” of the parcel itself that is being described. The boundaries of the parcel are then outlined from the point of beginning by distances and often also by courses, or by reference to natural or artificial monuments. A "monument” is a physical structure which marks the location of a corner or other survey point. A "natural monument” is a natural object such as a lake, stream or stone. An "artificial monument” is a man-made object such as a street or survey- or's marker. Courses, also known as bearings or azimuths, are compass directions with reference to a meridian. Thus, a "metes and bounds” description describes a parcel of land by reference to courses and distances and/or by reference to natural or artificial monuments. Metes and bounds descriptions are often combined with descriptions referring to government surveys or to plats of subdivisions. See Louisiana Real Estate Transactions, § 2:11.

. We note that former LSA-R.S. 35:17 (in effect at the time of the donation at issue herein) required that a notary public, who passed an act by which real estate was conveyed, recite in the description of the property the municipal number or address of the property if available: however, the failure to recite the municipal number or address did not affect the validity of the act. (LSA-R.S. 35:17 was repealed and reenacted, in substance, as LSA-C.C. art. 3352 by 2005 La. Acts, No. 169, § 1, effective July 1, 2006.) We further note the holding of Hibernia National Bank v. Belleville Historic Development, L.L.C., 2001-0657, pp. 6-7 (La.App. 4 Cir. 3/27/02), 815 So.2d 301, 305, writ denied, 2002-1177 (La.6/14/02), 818 So.2d 785 (which concerned LSA-R.S. 9:483l(C)’s requirements as to a property description contained in a notice of contract, notice of termination, statement of claim or privilege, or a notice of lis pendens), wherein the court held that the statute required such notices to contain a property description sufficient to clearly and permanently identify the property and noted the statute specifically provided that naming the street or mailing address, without more, was not sufficient to comply with its mandate.

. Having decided the appeal on this basis, we find it unnecessary to reach the remaining assignments of error.