JUDE G. GRAVOIS, Judge.
 

 |gThe plaintiffs, Kimberle and Dino Pa-ternostro, have appealed the summary judgment granted in favor of the defendant, Wells Fargo Home Mortgage, Inc. (“Wells Fargo”). For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiffs filed a petition for damages against Wells Fargo indicating that when they purchased their home located at 4620 Hessmer Avenue in Metairie, Louisiana, in 1999, they obtained both hazard and flood insurance coverage on their homesite (premises) and its contents (personal property) from State Farm Fire and Casualty Company (“State Farm”). In their petition, plaintiffs allege that they sustained losses to their personal property on August 29, 2005 from Hurricane Katrina, resulting in their submitting a claim to State Farm under their flood insurance policy for personal property losses amounting to $58,676.88. State Farm thereupon informed plaintiffs that $26,447.34 of their claim was over their policy |,-¡limits for personal property coverage, that $3,729.54 of their claim was non-recoverable due to depreciation, and that their claim would be reduced by $500 due to the policy’s deductible. State Farm thereupon paid $29,000 to plaintiffs for their personal property losses under their flood insurance policy issued by State Farm.
 

 In their petition, plaintiffs also allege, among other things: 1) that they obtained flood insurance coverage for their premises in the amount required by Wells Fargo, plus personal property coverage of up to $50,000; 2) that their flood insurance policy with State Farm had an indexed inflation provision on their personal property coverage so that the coverage levels thereon would automatically increase annually; 3) that in 2003 when Wells Fargo received notice of an underpayment of their flood insurance premiums, Wells Fargo paid the underpayment due and State Farm reinstated their contents coverage to $54,000; 4) that in 2004, Wells Fargo again underpaid their flood insurance premium and that State Farm again notified Wells Fargo of the underpayment; 5) that Wells Fargo did not, however, subsequently pay the underpayment premium, resulting in State Farm’s decreasing their personal property coverage level from $56,700 to $27,500; 6) that because Wells Fargo had received an identical notice the previous year and had paid the underpayment premium without any action by plaintiffs, they relied on Wells Fargo’s prior course of conduct and assumed that the underpay
 
 *47
 
 ment premium payment had been made by Wells Fargo as it had done in the prior year; 7) that because the prior year’s coverage had not been corrected, State Farm renewed the contents coverage at the $28,500 level for the 2005-06 coverage period; 8) that Wells Fargo placed itself in a fiduciary position with respect to the insurance premiums payments which plaintiffs relied on to their detriment; and 9) that Wells Fargo’s failure to pay their insurance premiums from |4the funds held in escrow constituted a breach of that fiduciary duty, making Wells Fargo liable to them for $30,176.88 for their excess personal property flood losses.
 

 Wells Fargo responded to plaintiffs’ petition with a general denial.
 

 Plaintiffs thereafter filed a supplemental and amending petition alleging, among other things: 1) that Wells Fargo voluntarily undertook to collect payments and make payments from plaintiffs’ escrow account for the premiums on plaintiffs personal property, for which Wells Fargo had no insurable interest; 2) that the renewal certificates plaintiffs received from State Farm stated “do not pay” and “premium is being paid by mortgagee”; 3) that Wells Fargo intervened in the relationship between plaintiffs and their insurer which created a legal relationship and duty between Wells Fargo and plaintiffs; and 4) alternatively, that the actions of Wells Fargo on behalf of plaintiffs created a contract which Wells Fargo breached by failing to pay the premiums maintaining the insurance at the amount agreed to at the outset of the parties’ business relationship.
 

 Wells Fargo also denied the allegations of plaintiffs’ supplemental and amending petition.
 

 Wells Fargo thereafter filed a motion for summary judgment claiming it was not liable to plaintiffs under any legal theory. The trial court held a hearing on the motion for summary judgment
 
 [1]
 
 and took the matter under advisement. The trial court subsequently rendered judgment in favor of Wells Fargo granting its motion for summary judgment. This timely appeal followed.
 

 LAW
 

 Appellate courts review a district court’s grant of summary judgment
 
 de novo,
 
 viewing the record and all reasonable inferences that may be drawn from it |sin the light most favorable to the non-movant.
 
 Hines v. Garrett,
 
 2004-0806 (La.6/25/04) 876 So.2d 764, 765. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
 

 A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. An issue is a genuine issue if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate as there is no need for trial on that issue.
 
 Id.
 

 Summary judgment procedure is intended to make a just and speedy determination of every action. La. C.C.P. art. 966. It is favored and the procedure shall be construed to achieve this intention.
 
 Id.
 
 Under C.C.P. art. 966, the initial burden is on the mover to show that no genuine
 
 *48
 
 issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967.
 

 ANALYSIS
 

 In its motion for summary judgment, Wells Fargo claimed that it had no contractual or other legal duty to procure or maintain any insurance on plaintiffs Ifiproperty, including plaintiffs’ personal property flood insurance coverage. It reasoned that because plaintiffs cannot establish a claim against Wells Fargo based on either contract or negligence, it was entitled to judgment as a matter of law. Specifically, Wells Fargo argued that plaintiffs’ claim based on fiduciary duty must be dismissed because LSA-R.S. 6:1124
 
 [2]
 
 expressly limits the imposition of a fiduciary duty on a lender such as Wells Fargo. Wells Fargo also argued that the mortgage contract expressly provided that plaintiffs had to procure and maintain flood insurance coverage; plaintiffs thus had the responsibility to ensure that the correct insurance premium was paid. Wells Fargo specifically notes that the notices regarding renewals were sent to plaintiffs with copies to Wells Fargo. Plaintiffs therefore had actual knowledge of the change in coverage about which they complain.
 

 Wells Fargo further argued that plaintiffs’ detrimental reliance claim must also be dismissed as a matter of law because any alleged detrimental reliance cannot be deemed reasonable. Wells Fargo contends that plaintiffs’ mortgage contract requires plaintiffs to procure and maintain insurance; thus any alleged reliance on Wells Fargo cannot be reasonable as such would allow plaintiffs to amend the provision of the mortgage contract to impose duties upon Wells Fargo that were not bargained for. Wells Fargo further argued that plaintiffs could not have reasonably relied on Wells Fargo to maintain coverage as alleged because there is no provision in the mortgage contract obligating Wells Fargo 1) to [7purchase or maintain insurance for the benefit of plaintiffs, 2) to notify plaintiffs of any change in coverage, or 3) to notify plaintiffs of any lack of coverage. Based on this reasoning, Wells Fargo argued that plaintiffs cannot succeed in a negligence claim against Wells Fargo.
 

 Finally, Wells Fargo argued that the Louisiana Credit Agreement Statute, LSA-R.S. 6:1121,
 
 et seq.,
 
 bars any causes of action against Wells Fargo based on its purported unwritten agreement to pay the
 
 *49
 
 flood insurance premiums for plaintiffs’ contents coverage. Specifically, Wells Fargo states that under these statutes,
 
 [3]
 
 unless an agreement is in writing and signed by the creditor and debtor, there can be no finding of a new agreement. Wells Fargo concludes that these statutes bar all causes of action whether in contract or tort because plaintiffs’ purported agreement is not in writing.
 

 In addition to plaintiffs’ mortgage contract, the following were among the exhibits that were attached to Wells Fargo’s motion for summary judgment:
 

 (1) The original declarations page for the flood insurance policy for the coverage period from February 10, 1999 to February 10, 2000, with plaintiffs’ personal property coverage being set at $50,000.
 

 (2) A letter from State Farm to plaintiffs dated February 10, 2003, with a copy to Wells Fargo, stating that the premium was underpaid on the flood insurance policy for the period from February 2003 to February 2004, and advising that the coverage would be reduced to match the amount of premium paid. Enclosed therewith was a declarations page Ron the flood insurance policy from State Farm dated February 10, 2003 addressed to plaintiffs showing that plaintiffs’ personal property coverage was set at $30,000.
 

 (3) A declarations page from State Farm on the flood insurance policy dated February 18, 2003, addressed to plaintiffs, showing that their personal property coverage had been increased from $30,000 to $55,400.
 

 (4) A letter from State Farm to plaintiffs dated February 6, 2004, with a copy to Wells Fargo, stating that the premium was underpaid on the flood insurance policy for the period from February 2004 to February 2005, and advising that the coverage would be reduced to match the amount of premium paid. Enclosed therewith was a declarations page on the flood insurance policy dated February 6, 2004 for the coverage period from February 10, 2004 to February 10, 2005 addressed to plaintiffs showing plaintiffs’ personal property coverage being set at $27,500.
 

 (5) A renewal certificate for the flood insurance policy from State Farm addressed to plaintiffs dated December 27, 2004 for the coverage period from February 10, 2005 to February 10, 2006, indicating that plaintiffs’ personal property coverage was set at $28,500.
 

 
 *50
 
 Plaintiffs opposed the motion for summary judgment arguing that material facts regarding the responsibility for and management of the escrow account for flood insurance coverage are in dispute. Plaintiffs contend that under C.C. art. 2292,
 
 [4]
 
 Wells Fargo is responsible because it voluntarily usurped plaintiffs’ right to manage payment of their flood insurance policy premiums. Plaintiffs argue that they were not given a choice as to how the premiums were paid; rather, there was one bill issued to cover the premiums on both their personal property coverage and them real property coverage, and both were paid by Wells Fargo. Plaintiffs conclude that Wells Fargo is liable for them losses under the law of delictual liability citing C.C. art. 2315
 
 [5]
 
 and C.C. art. 2316.
 
 [6]
 
 19 Plaintiffs also argue that the Louisiana Credit Agreement Statute is not relevant here because this matter does not involve any oral credit agreement.
 

 Attached to plaintiffs’ motion in opposition are identical affidavits executed individually by both plaintiffs, essentially verifying by affidavit all of the allegations contained in their original and supplemental petitions.
 

 A review of the evidence submitted by Wells Fargo in support of the motion for summary judgment indicates that Section 5 of the mortgage contract clearly obligates the borrower to obtain insurance. This section further provides that if the borrower fails to maintain insurance, the lender
 
 may
 
 obtain insurance, and in this instance, the insurance obtained by the lender
 
 may or may not
 
 cover the borrower’s contents. (Emphasis added.) Thus, under the terms of the mortgage contract, there is no obligation or duty on the part of Wells Fargo to obtain insurance. Further, Section 3 of the mortgage contract provides that the borrower shall pay to the lender funds to provide for payments of amounts due for insurance. This section provides that the lender may waive borrower’s obligation to pay these funds to the lender and that the borrower may pay these amounts directly. Thus, contrary to plaintiffs’ assertion that they had no choice in the manner in which the flood insurance premiums were paid, under the terms of the mortgage contract, plaintiffs could have sought written waiver from Wells Fargo to pay the flood insurance premiums directly to State Farm.
 

 Moreover, there is nothing in plaintiffs’ affidavits to refute the evidence submitted by Wells Fargo that clearly shows that plaintiffs had notice of the decrease in the personal property contents coverage since at least February 2004 and took no action of their own to increase the coverage to their desired level. | ,n Wells Fargo submitted evidence to show that when the underpayment was made in 2003, State Farm sent plaintiffs a letter informing them of the underpayment accompanied by a new declarations page showing the personal property contents coverage had been decreased to $30,000. After the additional payment was made, State Farm sent plaintiffs a second declarations page indicating
 
 *51
 
 that the personal property contents coverage was increased to $55,400. Thereafter in 2004, plaintiffs were informed by State Farm that Wells Fargo again had underpaid the premium and the amount of insurance was decreased accordingly. This letter was accompanied by a declarations page indicating plaintiffs’ personal property coverage was decreased to $27,500. After this correspondence, plaintiffs did not receive a new declarations page indicating their personal property contents coverage was raised back to the higher amount which would have indicated that an additional premium payment had been made by Wells Fargo. Additionally, plaintiffs received a renewal certificate for their flood insurance policy from State Farm dated December 27, 2004 for the coverage period from February 10, 2005 to February 10, 2006 indicating that their personal property coverage was $28,500. Therefore, plaintiffs could not have reasonably believed that Wells Fargo had made or would make an additional payment increasing the personal contents coverage to plaintiffs’ desired level. As plaintiffs have acknowledged in their petition and brief to this Court, Wells Fargo had no security interest in their personal property coverage. Thus, Wells Fargo had no obligation to ensure that plaintiffs’ personal property contents coverage was at the level plaintiffs originally requested.
 

 For the foregoing reasons, we find that Wells Fargo had no contractual or other legal duty to procure or maintain any insurance on plaintiffs property, including personal property flood insurance coverage. Accordingly, Wells Fargo Inis not liable to plaintiffs under any legal theory.
 
 [7]
 
 Therefore, there is no genuine issue of material fact herein and Wells Fargo is aecordingly entitled to judgment as a matter of law.
 

 CONCLUSION
 

 The summary judgment granted by the trial court in favor of Wells Fargo is hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . A transcript of the hearing was not made part of the appellate record.
 

 [2]
 

 . This statute provides:
 

 No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciaty, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.
 

 [3]
 

 . LSA-R.S. 6:1122 provides:
 

 A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor. LSA-R.S. 6:1124 provides:
 

 No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.
 

 [4]
 

 . C.C. art. 2292 provides:
 

 There is a management of affairs when a person, the manager, acts without authority to protect the interests of another, the owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances.
 

 [5]
 

 . C.C. art. 2315 provides:
 

 A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
 

 [6]
 

 .C.C. art. 2316 provides:
 

 Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
 

 [7]
 

 . This holding makes a discussion of whether or not the Louisiana Credit Agreement Statute, LSA-R.S. 6:1121,
 
 et seq.,
 
 is applicable to this case moot.