JUDE G. GRAVOIS, Judge.
lain these consolidated appeals arising out of one district court case, defendant/appellant, 3901 Ridgelake Drive, L.L.C. (“Ridgelake”), appeals several summary judgments rendered in favor of plaintiffs/appellees on their Joint Petition to Enforce Contractors’ Liens under the Private Works Act, La. R.S. 9:4801 et seq., awarding plaintiffs/appellees various amounts due on their liens and dismissing Ridgelake’s reconventional demand against them, as described below. Plaintiffs [Simms Hardin Construction Company, Inc. (“Simms Hardin”), Sharp Electric, L.L.C. (“Sharp Electric”), Gallo Mechanical, L.L.C. (“Gallo”), Commercial Paint Company, Inc. (“Commercial Paint”), Crasto Glass and Mirror Company, Inc. (“Crasto Glass”), and Year Round Heating and Air Conditioning Company, Inc. (“Year Round”) ][1] are various subcontractors who provided materials and construction services to build a condominium development known as |4Pontchartrain Caye Condominiums, of which Ridgelake was the owner and developer.
On appeal, Ridgelake argues that the lien affidavits filed by plaintiffs were invalid under La. R.S. 9:4822(G) because they did not distinguish between or itemize the nature and extent of materials and labor furnished, and did not particularly identify the individual properties (the particular condominium units) to which they attached. Ridgelake also argues that the *61 lien affidavits were invalid because the Private Works Act does not allow a subcontractor to lien an entire condominium project when the subcontractor is aware that it is working on individual condominium units owned by different owners.
In brief, appellees argue that these appeals are moot because the liens were cancelled after Ridgelake obtained lien release bonds from a surety company, and therefore, the validity of the liens is no longer at issue. Alternatively, appellees argue that the liens were valid and proper under the Private Works Act, and accordingly, all judgments should be affirmed. For the following reasons, we affirm the judgments of the trial court under review.

FACTS AND PROCEDURAL HISTORY

Ridgelake, the owner and developer of the Pontchartrain Caye Condominiums project, contracted with Construction-South, Inc. (“ConstructionSouth”) to build the condominium complex. Construction-South in turn entered into subcontracts with plaintiffs, respectively, for various particular aspects of the construction, including painting, electrical work, and heating and air-conditioning installation. During the period between February 16, 2007 and April 12, 2007, Ridgelake sold several of the condominium units to individual owners.
On April 16, 2007, each of the plaintiffs recorded individual “Statement of Lien Claim” affidavits, asserting their rights under the Private Works Act. On IsApril 11, 2008, plaintiffs filed a Joint Petition for Enforcement of Contractors’ Liens against Ridgelake, ConstructionSouth, their surety under the contract,[2] and the individual condominium unit owners,[3] alleging that the defendants were jointly and severally liable to plaintiffs, respectively, for various specified dollar amounts representing labor, materials, and supplies provided by plaintiffs pursuant to their respective subcontracts, and that despite amicable demand, plaintiffs had not been paid. In order to release the individual condominium units from the effects of the recorded liens, Ridgelake substituted lien release bonds in place of each of the subcontractors’ liens on the project property and cancelled the liens, thereby removing the liens from the immovable property and providing plaintiffs with a right of action against the bonding company that issued the lien release bonds, International Fidelity Insurance Company (“IFIC”). In response, plaintiffs added IFIC as a party to this litigation, asserting their claims against the lien release bonds. It has been asserted in briefs and in the record that IFIC has in fact paid all amounts due the subcontractors pursuant to the lien release bonds.
Other issues between Ridgelake, the subcontractors, and the unit owners proceeded to arbitration and other proceedings in federal court. According to the record, the binding arbitration resulted in a decision against Ridgelake and in favor of the subcontractors on the issue of defec *62 tive work, although allowing Ridgelake certain credits against the total amounts owed to the subcontractors.[4]
1 fiRidgelake filed an Answer, Peremptory Exceptions, and Reconventional Demand in 2009. In the exceptions, Ridgelake argued that plaintiffs had no cause of action and no right of action against Ridgelake because the liens were not timely filed, i.e., not within 60 days of substantial completion of the applicable work, as per La. R.S. 9:4822, and thus their suit was prescribed. The reconventional demand asserted a damage claim against plaintiffs in the amount of $695,000, the cost of the lien release bonds purchased by Ridgelake, and ongoing damages for every day that the subcontractors’ liens remained on the public records.
The exceptions were heard and denied in a written judgment dated January 21, 2010. Ridgelake appealed and also noticed its intent to file a writ application. In a ruling dated June 29, 2010, this Court dismissed Ridgelake’s appeal, finding that the judgment in question was interlocutory and thus not appealable. Simms Hardin Company, L.L.C., et al v. 3901 Ridgelake Drive, L.L.C., et al, 10-354 (La.App. 5 Cir. 6/29/10) (motions to dismiss appeal granted). This Court also found that no writ application requesting supervisory review of this judgment had been properly filed, and thus declined to consider the merits of the matter at that time.
On September 24, 2010, Ridgelake and IFIC filed a joint motion for summary judgment seeking a ruling that the subcontractors’ liens were invalid. Movers argued that the liens were invalid under La. R.S. 9:4822 because the liens “failed to reasonably itemize the obligation giving rise to the claim or privilege ... because it is impossible to tell which claim is associated with which property.” They also argued that the Private Works Act did not allow a subcontractor to lien the entire immovable “in globo.” Following a hearing on December 9, 2010, the trial court denied the motion by written judgment dated January 6, 2011. The record does not reflect that Ridgelake and IFIC sought this Court’s supervisory review of that judgment.
| yPlaintiffs/appellees then proceeded to file a series of motions for summary judgment against Ridgelake and IFIC, to-wit:
• On November 21, 2011, Sharp Electric moved for summary judgment against Ridgelake and IFIC for the amounts claimed under its lien affidavit, asserting that there was no genuine issue of material fact, as the trial court had previously found the liens to be valid. The motion was heard on December 14, 2011 and granted on January 31, 2012.[5]
• On December 29, 2011, Crasto Glass filed a motion for summary judgment, also seeking judgment against Ridge-lake and IFIC for the amounts claimed on its lien affidavit, which motion was heard on January 31, 2012 and granted on February 15, 2012.
• On January 3, 2012, Simms Hardin filed a motion for summary judgment, also seeking judgment against Ridge-lake and IFIC for the amounts *63 claimed on its lien affidavit, which motion was also heard on January 31, 2012 and granted on February 15, 2012.
• Also on January 3, 2012, Gallo filed a motion for summary judgment, also seeking judgment against Ridgelake and IFIC for the amounts claimed on its lien affidavit, which motion was heard on February 15, 2012 and granted on February 28, 2012.
• On January 5, 2012, Commercial Paint filed a motion for summary judgment, also seeking judgment against Ridge-lake for the amounts claimed on its lien affidavit, which motion was also heard on January 31, 2012 and granted on February 15, 2012.
• Finally, on January 23, 2012, Year Round filed a motion for summary judgment, also seeking judgment against Ridgelake and IFIC for the amounts claimed on its lien affidavit, which motion was heard and granted on February 15, 2012.
Meanwhile, on January 18, 2012, Ridge-lake filed an Opposition to Commercial Paint and Simms Hardin’s motions for summary judgment, also including within that pleading a “Cross Motion for Summary Judgment,” arguing that the liens were invalid on the same grounds it had asserted in its 2010 motion for summary judgment that was denied on January 6, 2011. On January 26, 2012, IFIC also filed an opposition to these motions for summary judgment, therein also adopting Ridgelake’s “Cross Motion for Summary Judgment.”
IsRidgelake was present at the hearing on several of the motions for summary judgment that was held on January 31, 2012. However, Ridgelake did not appear at the hearing on February 15, 2012 on the remaining motions for summary judgment despite having received notice of the continuance of those motions at the January 31, 2012 hearing.
Following the grants of the subcontractors’ motions for summary judgment on February 15 and February 28, 2012, Ridgelake timely appealed those judgments. These appeals are docketed as Appeal No. 12-CA-469.
Meanwhile, on March 12, 2012, plaintiffs filed a joint motion for summary judgment, seeking dismissal of Ridgelake’s reconven-tional demand, since only one of the six summary judgments granted in favor of plaintiffs in January/February of 2012 had done so.[6] Following a hearing on April 19, 2012, at which Ridgelake did not appear,[7] this motion was granted on May 4, 2012, dismissing Ridgelake’s reconventional demand. Ridgelake appealed this judgment twice (the first notice of appeal was filed on June 28, 2012 and was docketed as Appeal No. 12-CA-548; the second notice of appeal was filed on July 5, 2012 and was docketed as Appeal No. 12-CA-607). On October 16, 2012, this Court consolidated Ridgelake’s appeals.

MOOTNESS OF THE APPEALS

In all three of these consolidated appeals, appellees argue that the appeals are moot because the liens were cancelled long ago; therefore, the issue of their va *64 lidity is therefore moot. We disagree. Though the liens have been cancelled and appellees have apparently all been paid their lien claim amounts under the lien 19release bonds, Ridgelake’s reconventional demand asserted a damage claim against appellees for the amount that it paid to obtain the lien release bonds, arguing that the liens were invalid. Ridgelake has appealed the judgment of May 4, 2012 that dismissed its reconventional demand. Thus, the issue of whether the liens were valid is directly relevant to whether the trial court’s dismissal of Ridgelake’s recon-ventional demand was proper.

LAW AND ANALYSIS

As each appeal concerns the granting of motions for summary judgments, we are governed by the law concerning summary judgments. Appellate courts review a district court’s grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. An issue is a genuine issue if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate, as there is no need for trial on that issue. Id. Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. Hubbard v. Jefferson Parish Parks and Recreation, 10-24 (La.App. 5 Cir. 5/25/10), 40 So.3d 1106, 1110.
| inSummary judgment procedure is intended to make a just and speedy determination of every action. La. C.C.P. art. 966. It is favored and the procedure shall be construed to achieve this intention. Id. Under La. C.C.P. art. 966, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Paternostro v. Wells Fargo Home Mortg., Inc., 09-469 (La.App. 5 Cir. 12/8/09), 30 So.3d 45.
The substantive issues involved herein fall under the Private Works Act, as discussed below.

APPEAL NO. 12-CA-469

In this appeal, Ridgelake appeals the summary judgments rendered against it on February 15 and February 28, 2012.[8] *65 These judgments concern the separate motions for summary judgments filed by five of the plaintiffs seeking specific monetary judgments on their respective lien claims.[9]
On appeal, Ridgelake argues that each of the summary judgments rendered on February 15 and February 28, 2012 must be reversed because the liens were Ininvalid. First, we note that the validity of the liens was not the subject matter of the motions for summary judgment that led to the appealed judgments, but rather the issue then was the sums due on the liens. The issue of the validity of the liens was previously addressed in Ridgelake and IFIC’s joint motion for summary judgment filed in 2010, which was denied by written judgment dated January 6, 2011. A review of the transcript of that hearing and subsequent hearings shows that the trial court ruled on the merits of the claim, rather than denying summary judgment on the basis that genuine issues of material fact remained. The trial court disagreed with Ridgelake’s arguments and ruled that the liens were not invalid under the Private Works Act on the grounds asserted by Ridgelake and IFIC.
Though the validity of the liens was not at issue in the motions for summary judgment that are the subjects of these consolidated appeals, the judgment of January 6, 2011 denying Ridgelake and IFIC’s joint motion for summary judgment may be raised here. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to a review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the correctness of the final judgment from which the party has taken the appeal. Sporl v. Sport, 00-1321 (La.App. 5 Cir. 5/30/01), 788 So.2d 682, 684, writ denied, 01-1926 (La.10/12/01), 799 So.2d 506; Ellefson v. Ellefson, 616 So.2d 221, 224 (La.App. 5 Cir.1993), writ denied, 617 So.2d 1183 (La.1993), and writ denied, 617 So.2d 1183 (La.1993). Given that the summary judgments in plaintiffs’ favor on the lien amounts and the summary judgment rendered on May 4, 2012 dismissing Ridge-lake’s reconventional demand are final judgments, the denial of Ridgelake’s motion for summary judgment on January 6, 2011 regarding the validity of the liens may be reviewed by this Court at this time.
| 12The Louisiana Private Works Act provides a method for contractors and others to recover the costs of labor and/or materials from a party with whom there is no contract. La. R.S. 9:4801 et seq. A claim against the owner of the immovable is secured by filing a lien against the immovable on which, in this case, the materials were incorporated or labor was performed. The purpose of a statement or claim of privilege is to give notice to the owner (and the contractor) of the existence of the claim and to give notice to persons *66 who may deal with the owner that a privilege is claimed on the property.
The Private Works Act is in derogation of general contract law, and thus must be strictly construed. Nevertheless, in interpreting the Private Works Act, we must not overlook the legislative intent and fundamental aim of the act, which is to protect materialmen, laborers and subcontractors who engage in construction and repair projects. LSA-R.S. 9:4801 et seq.; Bernard Lumber Company, Inc. v. Lake Forest Construction Co., Inc., 572 So.2d 178 (La.App. 1 Cir.1990). Moreover, strict construction cannot be so interpreted as to permit purely technical objections to defeat the real intent of the statute, which is to protect materialmen, laborers and subcontractors who engage in construction projects. Authement’s Ornamental Iron Works v. Reisfeld, 376 So.2d 1061 (La.App. 4th Cir.1979); Morgan v. Audubon Const. Corp., 485 So.2d 529 (La.App. 5 Cir.1986).
Hibernia Nat. Bank v. Belleville Historic Dev., L.L.C., 01-0657 (La.App. 4 Cir. 3/27/02), 815 So.2d 301, 305-06, writ denied, 02-1177 (La.6/14/02), 818 So.2d 785.
La. R.S. 9:4822(G) provides that a statement of a claim or privilege:
(1) Shall be in writing.
(2) Shall be signed by the person asserting the same or his representative.
(3) Shall reasonably identify the immovable with respect to which the work was performed.
(4) Shall set forth the amount and nature of the obligation giving rise to the claim or privilege and reasonably itemize the elements comprising it including the person for whom or to whom the contract was performed, material supplied, or services rendered.
Ridgelake argues that the lien affidavits are invalid because:
113(1) they did not reasonably identify the immovable with respect to which the work was performed;
(2) they did not reasonably itemize the elements comprising material supplied or services rendered; and
(3) they did not reasonably identify the property subject to the lien.
Ridgelake also argues that the lien affidavits fail to specify what work was done or materials were used in each individual unit.
Clearly, the lien affidavits filed by each subcontractor meet the first and second requirements of La. R.S. 9:4822(G), as they are in writing and are signed by an appropriate representative of the respective subcontractors. At issue are the third and fourth requirements.
First, Ridgelake argues that the lien affidavits do not reasonably identify the immovable with respect to which the work was performed and do not reasonably identify the property subject to the liens. Here, Ridgelake argues that the lien affidavits referenced the wrong lot numbers (those lots numbers prior to the resubdivision of several lots into one lot for the project), and also that they designated property greater than that on which the condominiums were built, which additional property was owned by third persons. In response, appellees argue that this is a “technical” defect that does not otherwise invalidate the liens because the property description was adequate to put third persons on notice that the subject property had a lien against it, until the liens were bonded out by Ridgelake.
In each of the lien affidavits filed by the plaintiffs, the property is identified as:
Lots 7, 8, 9,10, 11,12 and 13, Square 53, Harlem Parkway Subdivision, Parish of *67 Jefferson, State of Louisiana otherwise known as Pontchartrain Caye Condominiums, 3901 Ridgelake Drive, Metair-ie, Louisiana.
In Hibernia Nat. Bank v. Belleville Historic Dev., L.L.C., 01-0657 (La.App. 4 Cir. 3/27/02), 815 So.2d 301, 305; writ denied, 02-1177 (La.6/14/02), 818 So.2d 785, the Court of Appeal reversed a trial court judgment that found the property description in the hen affidavit inadequate under the statute, holding:
The municipal address was listed as 913 Pelican Avenue instead of 813 Pelican Avenue. However, we find that the discrepancy to be of no moment for two reasons. First, the notice of contract described the property with a lengthy legal description annexed thereto as “Exhibit A.” Nowhere is there a municipal address used to identify the work site. Secondly, we note that pursuant to La. R.S. 9:4831(C) a notice of contract, notice of termination, statement of claim or privilege or a notice of lis pendens is required to contain a property description sufficient to clearly and permanently identify the property. The statute specifically provides that naming the street or mailing address, without more, is not sufficient to comply with its mandate. Further it specifically states that a description which includes the lot and/or square and/or subdivision or township and range shall meet its requirements. (Emphasis added.)
Upon review, as was found in Hibernia, we find that the property description contained in each of the lien affidavits in question is adequate under La. R.S. 9:4822(G). Though the property description used the original lot numbers prior to the resubdivision of the property into one lot, the description comported with the statute’s requirement to put the owners and third persons on notice regarding which immovable property was subject to the privilege.
Ridgelake further argues that the lien affidavits in question do hot particularly identify which work was performed on which particular condo unit. However, the record shows that the work performed by each subcontractor was performed throughout the entire condominium development prior to the sale of individual units. In Hibernia, the court found that the following description adequately met the statute’s requirements of specificity:
... to furnish labor material to construct twenty-one (21) condominium units at Belleville Condominiums, a project of Belleville Historic Development, L.L.C. Said work was performed as per the aforementioned contract.
|1fiWe likewise find that lien affidavits in question adequately meet the statute’s requirements of specificity.
Ridgelake also argues that the individual lien affidavits do not adequately describe the work performed or the materials supplied. Ridgelake argues that the “lump sum” amounts in each affidavit, without explanation, do not meet the statutory requirements of La. R.S. 9:4822(G). Ridgelake cites Tee It Up Golf, Inc. v. Bayou State Construction, 09-855 (La.App. 3 Cir. 2/10/10), 30 So.3d 1159, in support of its position. There, the contractor, Bayou State, was hired by John Nobles and/or Tee it Up Golf to construct a strip mall and to do improvements on Nobles’ private home. When outstanding invoices were left unpaid, Bayou State filed materialman’s liens on each of the properties, but for the identical amount in each lien, without distinction of which work was performed on which property. Noble sought to have the liens cancelled for numerous deficiencies, including the “failure to reasonably itemize the elements comprising the amounts and obligations assert *68 ed.” Each of the liens stated the debt owed on “Materials Supplied” as a lump sum of $180,762.59. The Third Circuit held that simply noting “a lump sum amount cannot meet the statutory requirement to set forth the amount and nature of the claim giving rise to the privilege.... ” Further, the court found that there was no attempt to itemize the elements comprising the amount claimed, a requirement of the statute. The court affirmed the trial court’s ruling ordering that the liens be cancelled.
Tee It Up Golf is distinguishable from the present case. The lien affidavits in this case are attached to the original petition and are summarized as follows:
• Sharp Electric’s lien affidavit claims the amount of $91,492.60 for “electrical and lighting work.”
• Commercial Paint’s lien affidavit asserts a claim for the amount of $58,563.10 for “wall preparation and general painting work.”
Ikí* Simms Hardin’s lien affidavit claims the amount of $106,248.00 for “framing, insulation, and drywall installation.”
• Gallo’s lien affidavit claims the amount of $78,382.20 for “plumbing installation work.”
• Crasto Glass’s lien affidavit claims the amount of $45,346.80 for “aluminum framing and glass and glazing installation work.”
• Year Round’s Statement of Lien claim claims the amount of $119,028.70 for “air conditioning and ventilation work.”
In the lien affidavits, the descriptions of the work performed are individualized as to each subcontractor and sufficiently describe the work performed by each. Further, this case does not involve separate and distinct parcels of immovable property as was the case in Tee It Up Golf (the strip mall and the private home). Though the condominiums were sold as individual units, the various subcontracts were for construction work to be performed on the condominium complex as a whole.[10]
Ridgelake additionally argues that the lien affidavits are all identical in form, they all ask for the same amount of attorney’s fees, they are all notarized by the same person, they are all executed on the same day, and they have perfectly sequential mortgage book document numbers indicating that they were all filed at the same time. These facts, however, are not violations of the Private Works Act and thus do not affect the validity of the lien affidavits.
For the foregoing reasons, we find that the lien affidavits involved in this case all contain a sufficient property description and a sufficient description of the work performed that gave rise to the claim, and thus the lien affidavits are not 117invalid on these bases. Because no genuine issues as to material fact remain and the movers are entitled to judgment as a matter of law, *69 the summary judgments involved in Appeal No. 12-CA-469 are affirmed.

APPEAL NOS. 12-CA-548 AND 12-CA-607

In these appeals, Ridgelake appeals the May 4, 2012 grant of the joint summary judgment in favor of five plaintiffs dismissing Ridgelake’s reeonventional demand.[11] In both appeals, Ridgelake asserts the same grounds as asserted in Appeal No. 12-CA-469, that the liens were invalid. Given that we have found, supra, the liens to be valid for the reasons expressed above, and because no further grounds on appeal have been asserted in these appeals, we accordingly affirm the trial court’s judgment of May 4, 2012 that dismissed Ridgelake’s reeonventional demand. Because the liens were valid, Ridgelake has failed to show that it sustained any compensable damages by obtaining the lien release bonds to cancel the liens from the subject property. Again, because no genuine issues as to material fact remain and the movers are entitled to judgment as a matter of law, the summary judgment involved in Appeal Nos. 12-CA-548 and 12-CA-607 is affirmed.

CONCLUSION

For the foregoing reasons, the summary judgments rendered in favor of plaintiffs/appellees on February 15 and 28, 2012, and on May 4, 2012, are hereby affirmed. All costs of these appeals are assessed to appellant.

AFFIRMED

. Simms Hardin, Sharp Electric, Gallo, Commercial Paint, Crasto Glass, and Year Round are sometimes referred to herein collectively as "plaintiffs.” Only three of the plaintiffs have filed briefs as appellees herein: Simms Hardin, Commercial Paint, and Crasto Glass. They will sometimes be referred to herein collectively as "plaintiffs/appellees” or "ap-pellees.”

. Plaintiffs’ petition names Fidelity and Deposit Company of Maryland as the surety company which issued a labor and material payment bond and a performance bond in connection with the condo construction project. This surety company is not involved in this appeal.

. Plaintiffs' petition names the individual condo unit owners as Dorothy Watkins, wife of/ and Edwin C. Dorvin, Dwayne R. McClure and Bryan P. Scofield, Patricia Barilleau, wife of/and Donald C. Zerangue, Frances Lopinto, wife of/and William J. Dwyer, Anna Cannizza-ro, wife of/and Robert A. Steiner, Cynthia Anthony, wife of/and Michael S. Brandner, Sr., American, wife/and German Gacharna, and Anthony P. Doughty. These individuals are not involved in this appeal.

. The arbitration decision was confirmed in a judgment rendered on August 5, 2011 in the proceeding entitled ConstructionSouth, Inc. v. Gayle O. Jenkins, 669-185, 24th Judicial District Court, Parish of Jefferson, State of Louisiana.

. Although Ridgelake includes Sharp Electric as one of the parties in its certificate of service, Ridgelake's motions for appeal did not include Sharp Electric’s summary judgment dated January 31, 2012. Accordingly, this judgment is not under review before this Court in these consolidated appeals.

. Only five of the six plaintiffs joined in this motion; Gallo did not. Gallo had previously filed a separate motion for summary judgment on this claim, which was granted by the trial court in open court on February 15, 2012, and was included in Gallo’s written judgment dated February 28, 2012.

. The judgment notes that a hearing took place. Ridgelake is not listed in the judgment as having appeared at the hearing.

. Although appellant attaches to its brief in Appeal No. 12-CA-469 the Judgment dated May 4, 2012 concerning the joint motion for summary judgment filed by plaintiffs, Simms Hardin, Sharp Electric, Commercial Paint, Crasto, and Year Round, as an exhibit to appellant's brief, the May 4, 2012 Judgment is not before tire Court in this appeal, but rather is involved in Appeal No. 12-CA-607, which *65 is consolidated with this appeal and is discussed infra.

. Ridgelake argues in brief that it filed a cross motion for summary judgment in response to plaintiffs' separate motions. This is not the case, however. As noted above, Ridgelake’s "cross motion for summary judgment” was asserted on January 18, 2012 within its Opposition to Commercial Paint and Simms Hardin’s motion for summary judgment filed on January 5, 2012. A motion for summary judgment must be filed and served on the opposing parties in accordance with La. C.C.P. art. 966(B). This was not done in this case. Thus, Ridgelake did not properly urge a cross motion for summary judgment, notwithstanding IFIC’s attempt to "adopt” that pleading in its January 23, 2012 opposition to the motions for summary judgment filed by two of the plaintiffs. Also, the record does not contain any judgment on Ridgelake’s purported cross motion for summary judgment.

. Compare: Bradley Electrical Services, Inc. v. 2601, L.L.C., 11-0627 (La.App. 4 Cir. 12/14/11), 82 So.3d 1242, where the Court of Appeal affirmed a trial court ruling that dismissed the contractor's claims and cancelled the liens in the mortgage records for failing to set forth the nature of the obligation giving rise to the debt and for failure to itemize the materials supplied. Contractor Notoco, who supplied electrical materials to Bradley for improvements on a building, supplied the following description of the debt in the lien, which both the trial court and Court of Appeal, relying on Tee It Up Golf, found to be insufficient:
There is an unpaid balance of One Hundred ninety five thousand two hundred eighty and fourteen cents ($195,280.14) Dollars, together with contractual interest per an-num until paid, any assessed late fees, attorney's fees of $150.00 plus all costs, for services rendered.

. It is not entirely clear why Ridgelake filed two motions for appeal regarding the May 4, 2012 judgment. In the motion for appeal in Appeal No. 12-CA-607, the judgment on appeal is described as having been rendered on May 7, 2012, yet in brief it is described as having been rendered on May 4, 2012. The record shows only one judgment was rendered, on May 4, 2012, with a notice of that judgment having been mailed on May 7, 2012.